**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**DENNY LINDLEY,**

**Plaintiff,**

**v.**

**LIFE INVESTORS INSURANCE COMPANY OF AMERICA,**

**Defendant.**

**Case No. 08-CV-0379-CVE-PJC**

**OPINION AND ORDER**

Now before the Court are Plaintiff's Motion for Judgment on the Pleadings with Brief in Support (Dkt. # 50) and Plaintiff's Motion to Dismiss Defendant's Counterclaim for Declaratory Relief and Combined Brief in Support (Dkt. # 75). Plaintiff requests entry of partial judgment on the pleadings on defendant's counterclaim as to the meaning of the term "actual charges" under Oklahoma law. See Dkt. # 73, at 3. Defendant responds that plaintiff's motion is procedurally improper and, should the Court reach the substantive issue, that plaintiff fails to consider the context of the disputed language and the precedent relied on by plaintiff is inapplicable. Plaintiff also asks the Court to dismiss defendant's counterclaim, because complete relief can be afforded to the parties by a ruling on his claims.

**I.**

On June 16, 1995, Denny Lindley applied for a Cancer Only Policy (the Policy) from Bankers United Life Assurance Company (Bankers United). Bankers United issued a policy to Lindley with an effective date of July 1, 1995. Bankers United merged into Life Investors Insurance Company of America (Life Investors), and Life Investors is now the insurer under the Policy. The Policy is not a comprehensive healthcare policy but, instead, it insures Lindley "for loss incurred,

while this policy is in force, from Cancer first Positively Diagnosed after the 'waiting period', subject to the provisions" of the Policy. Dkt. # 10-2, at 2. Benefits are paid directly to the insured and the insured bears the burden to submit proof of loss with any claims.

The Policy became effective on July 1, 1995, and is renewable for life. The Policy is renewed on the next renewal date as long as the renewal premium has been paid. Id. at 17. The renewal date is defined as the "date on which the next premium (Renewal Premium) is due." Id. at 4. In this case, Lindley paid premiums on a monthly basis, and the Policy is renewed on the date his next premium is due. Id. at 3. Life Investors may not cancel the Policy as long as Lindley continues to pay the premium within the grace period of 31 days following each renewal date.

Lindley was diagnosed with cancer in October 2001 and began to submit claims for reimbursement of his medical expenses under the Policy. From October 2001 to January 2006, Lindley received reimbursement for the full amount listed on his providers' bills, and his claims totaled approximately $103,000. On January 27, 2006, Life Investors notified Lindley that it was instituting a new claims-handling policy limiting Lindley's benefits under the Policy to the "actual charges" billed by his providers. Dkt. # 10-3. Life Investors construes "actual charges" to mean the amount "being paid to and accepted as payment by the healthcare provider." Id. Life Investors explained that:

> Doctors, hospitals, and other healthcare providers will often send informational statements to the patient that contain "list" prices or "standard" rates for their medical services. This happens most frequently if the patient is covered by Medicare or a group health insurance plan. These statements are not true "bills" and do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full. Consequently, these types of informational statements do not reflect the "actual charges" being incurred and paid. The amounts healthcare providers are actually charging and accepting as payment are often significantly less than the amounts listed on these informational statements.

Id. at 1. Lindley continued to submit claims for the full amount billed by his providers, but Life Investors refused to pay the full amount listed on the bills. Instead, Life Investors would reduce payment on the claims to reflect the "actual charges" allegedly accepted by the provider. Oklahoma has enacted a statute, effective November 1, 2006, which states that "'actual charge' . . . means the amount actually paid by or on behalf of the insured and accepted by a provider for services provided." OKLA. STAT. tit. 36, § 3651. The statute applies to "insurance policies delivered, issued for delivery, or renewed on or after the effective date."[1] Id. (emphasis added).

On May 30, 2008, plaintiff filed this case alleging that Life Investors breached the Policy by refusing to pay the full amount of plaintiff's claims for cancer treatment. He alleged state law claims of breach of contract and bad faith against Life Investors. Life Investors filed a counterclaim seeking declaratory relief to clarify its obligations under the Policy. Life Investors requests:

(i) a declaration that the Policy does not require or obligate Life Investors to pay benefits for arbitrary "list" prices or bogus "chargemaster" prices created by hospitals or other medical providers in situations where, as here, such "list" prices are not genuinely being billed to, charged to, or paid by the insured under the Policy or any third party expected to pay for the insured's medical care;

(ii) a declaration that the "actual charges" for medical or other services under the terms of the Policy cannot reasonably be interpreted to mean a hospital's or other healthcare provider's arbitrary and often grossly inflated "list" prices in situations where, as here, such "list" prices are not genuinely being billed to, charged to, or paid by the insured under the Policy or any third party expected to pay for the insured's medical care;

(iii) a declaration that Life Investors has fully performed consistent with the terms of the Policy and that Life Investors has paid all benefits due under the Policy;

---

[1] Thus, there is an issue as to the application of this statute to the renewals of the Policy after November 1, 2006.

(iv) a declaration that Life Investors has paid all claims due under the Policy as required by applicable statutes, including [OKLA. STAT.] tit. 36, § 3651;

(v) a declaration holding that Life Investors has processed and paid all claims submitted by the plaintiff under the Policy reasonably and in good faith; and

(vi) such other and further relief as the Court may deem just and proper.

Dkt. # 10, at 15-16.

Lindley has filed a motion for judgment on the pleadings as to Life Investor's counterclaim on the ground that the term "actual charges" is ambiguous and must be construed in favor of the insured. He does not address the definition of actual charges stated in § 3651. In a footnote, plaintiff reserves the right to address the applicability of § 3651 at a later time, and states that he is not seeking judgment on the pleadings to the extent that Life Investor's is seeking a declaratory judgment concerning the application of § 3651 to the Policy. Dkt. # 50, at 7 n.1.

**II.**

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is governed by the same standard of review applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Nelson v. State Farm Mut. Auto Ins. Co., 419 F.3d 1117, 1119 (10th Cir. 2005). Thus, a court must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the nonmoving party." Id. (internal quotation marks and citation omitted); Ramirez v. Dept. of Corr., State of Colo., 222 F.3d 1238, 1241 (10th Cir. 2000). To survive judgment, a "complaint must contain enough facts to state a claim to relief that is plausible on its face." Anderson v. Suiters, 499 F.3d 1228, 1232 (10th Cir. 2007) (internal quotation marks and citation omitted). "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of

law.'" Park Univ. Enters., Inc. v. Am. Cas. Co., 442 F.3d 1239, 1244 (10th Cir. 2006) (quoting United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)). Fed. R. Civ. P. 12(d) further provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Hence, under Rule 12(c), a court should consider only matters in the pleadings or incorporated by reference in, or attached to, the answer or complaint. Park Univ. Enters., Inc., 442 F.3d at 1244; GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384-85 (10th Cir. 1997). Here, the Court may consider the Policy and the January 27, 2006 letter from Life Investors to Lindley without converting plaintiff's motion for judgment on the pleadings into a motion for summary judgment, because Life Investors referred to both documents in its counterclaim and the documents are central to the Court's review of the counterclaim. GFF Corp., 130 F.3d at 1384.

**III.**

Plaintiff asks the Court to exercise its discretion to dismiss defendant's counterclaim, because all issues in the counterclaim will be resolved by a final judgment on plaintiff's claims. Defendant responds that plaintiff's motion is procedurally improper, because it is untimely under Rule 12(b) and it does not clearly state under what part of Rule 12(b) plaintiff seeks relief. Even if the Court should consider plaintiff's motion to dismiss, defendant argues that its counterclaim is not a mirror image of the complaint and the counterclaim serves a useful purpose to determine the rights and obligations of the parties.

Plaintiff cites St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167 (10th Cir. 1995), to support its argument that defendant's counterclaim for declaratory relief should be dismissed. In St. Paul Fire & Marine, Phillip Runyon was sued for alleged malpractice when performing his duties as a nurse anesthetist. Id. at 1168. His liability insurer, St. Paul Fire & Marine Ins. Co. (St. Paul), refused to defend or indemnify him from the claims of professional malpractice, and he threatened to sue St. Paul for breach of contract and bad faith. On February 17, 1994, St. Paul filed a declaratory judgment action in federal court against Runyon to determine whether St. Paul had an obligation to defend and indemnify Runyon against claims of professional malpractice. The next day, Runyon filed a lawsuit in state court asserting claims of breach of contract and bad faith against St. Paul. Id. Runyon filed a motion to dismiss the declaratory judgment action on the basis that the same issues would be resolved in his state court action, and the district court granted Runyon's motion. On appeal, the Tenth Circuit noted that there was no dispute that the district court had subject matter jurisdiction over the dispute, but a district court has discretion not to hear a declaratory judgment action. Id. at 1169. The Tenth Circuit provided five factors to guide a district court when exercising its discretion to decline to hear a claim for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

Id. (quoting State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994)). The Tenth Circuit found that the same issues would be determined in a pending state court proceeding, and it was appropriate for the district court to defer to the state court to apply state contract and insurance

law. Id. at 1170. The Tenth Circuit also found that St. Paul was using its declaratory judgment action to race to a final judgment in an attempt to bar prosecution of the state court suit. Id. Therefore, the district court properly refused to hear St. Paul's claim for declaratory judgment.

Defendant argues, and the Court agrees, that plaintiff's motion to dismiss is untimely. Under Rule 12(b), a motion must be filed before a responsive pleading is filed. Fed. R. Civ. P. 12(b). Plaintiff implicitly acknowledges that his motion is untimely under Rule 12(b), but states that his motion to dismiss should be treated as a motion for judgment on the pleadings under Rule 12(c). Dkt. # 96, at 1; see also Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (untimely Rule 12(b) motion should be construed as a motion for judgment on the pleadings under Rule 12(c)). The Court also notes that an objection to the Court's jurisdiction is not waived by failing to file a timely Rule 12(b)(1) motion. Fed. R. Civ. P. 12(h). However, plaintiff has already filed a motion for judgment on the pleadings and did not raise any objection to the Court's jurisdiction. See Dkt. # 50. In fact, plaintiff's motion to dismiss was filed on April 22, 2009, over nine months after defendant filed its counterclaim on July 11, 2008. Because plaintiff's motion addresses the Court's subject matter jurisdiction to hear a claim, the Court will consider it but notes that the timeliness of plaintiff's motion is a relevant consideration. As will be discussed, plaintiff's delay in filing a motion to dismiss suggests that defendant is not using its counterclaim to race to a final judgment to prevent plaintiff from litigating his claims.

This case does not raise the same concerns as St. Paul Fire & Marine, and defendant may proceed with its counterclaim for declaratory relief. Plaintiff's case is pending in this Court and, unlike St. Paul Fire & Marine, there is no possibility that hearing defendant's counterclaim will create needless friction between state and federal courts. The Court also notes that plaintiff has filed

a motion for judgment on the pleadings as to defendant's counterclaim and, if any party is racing to judgment, it is plaintiff rather than defendant. It also relevant that plaintiff filed a motion to dismiss over nine months after the counterclaim was filed. This shows that defendant has not raced to judgment on its counterclaim, and the presence of the counterclaim has not interfered with plaintiff's ability to pursue his claims. Defendant is also correct that its counterclaim is not a mirror image of the complaint. Although the counterclaim raises some issues that will be decided as part of plaintiff's claims, it is not certain that all of defendant's arguments can be raised as defenses to plaintiff's claims. Therefore, the Court declines to dismiss defendant's counterclaim for declaratory relief and will proceed to consider plaintiff's motion for judgment on the pleadings as the defendant's counterclaim.

**IV.**

Plaintiff seeks the entry of partial judgment on the pleadings of defendant's counterclaim as to the meaning of "actual charges" under Oklahoma law before the passage of § 3651. This issue is relevant to the partial denial of any claims submitted by plaintiff between January 27 and November 1, 2006.[2] The Court finds that this issue may be resolved on a motion for judgment on the pleadings under Rule 12(c).

Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla.

---

2 Plaintiff also asserts that § 3651 may be unconstitutional or invalid if it were to be applied to any claims after November 1, 2006. Neither party has briefed the effect of § 3651 on plaintiff's claims and the Court will not address the issue in this Opinion and Order.

Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True Plastering Co. v. U.S. Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). If an insurance contract contains an ambiguous term, the Court may refer to extrinsic evidence to interpret the insurance policy. Gable, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 767 (10th Cir. 1999) (citing Pierce Couch Hendrickson Baysinger & Green v. Freede, 936 P.2d 906, 912 (Okla. 1997)). When construing an ambiguous term in an insurance contract, a court must consider "not what the drafter intended . . . but what a reasonable person in the position of the insured would have understood [the ambiguous provision] to mean." American Economy Ins. Co. v. Bogdahn, 89 P.3d 1051, 1054 (Okla. 2004).

The first issue the Court must determine is whether "actual charges" as used in the Policy is an ambiguous term under Oklahoma law. The briefs submitted by both parties provide limited discussion of Oklahoma insurance law and, instead, both sides ask the Court to consider interpretations of the term "actual charges" by federal courts applying the law of other states. As the Court has noted, language in an insurance policy is ambiguous if it is susceptible to more than one reasonable interpretation. Equity Ins. Co. v. City of Jenks, 184 P.3d 541 (Okla. 2008); Dodson v. St. Paul Ins. Co., 812 P.2d 372 (Okla. 1991). An insured may not "insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it

contradict the written instrument's plain terms under the guise of a latent ambiguity." Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1034 (10th Cir. 2002). Plaintiff assumes that he must automatically prevail if the Court finds that the term "actual charges" is ambiguous, but he primarily relies on authority from other jurisdictions to support this argument. Oklahoma has not adopted such a strict rule of construction but, instead, applies the doctrine of reasonable expectations to construe ambiguous policy language.[3] See Yaffe Cos., Inc. v. Great American Ins. Co., 499 F.3d 1182, 1185 (10th Cir. 2007); Max True Plastering Co., 912 P.2d at 865. The Oklahoma Supreme Court has stated:

> Under the reasonable expectations doctrine, when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean. Thus, in construing an ambiguity or uncertainty against the insurer and in favor of the insured, Oklahoma now looks to the "objectively reasonable expectations" of the insured to fashion a remedy.

Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 868 (Okla. 2003). If the Court finds that the term "actual charges" is ambiguous, the Court must determine the expectations of a reasonable person in the same position as the insured, but this does not automatically mean that the insured's interpretation will prevail. See Max True Plastering Co., 912 P.2d at 867 ("The reasonable expectation doctrine is a double-edged sword-both parties to the insurance contract may rely upon their reasonable expectations.").

---

[3] Plaintiff relies on Metzger v. American Fidelity Assurance Co., 2006 WL 2792435 (W.D. Okla. Sep. 26, 2006), to support his argument that ambiguous policy language must be strictly construed against the insured. However, Metzger does not address the effect of Max True on the interpretation of insurance contracts under Oklahoma law, and it relies on cases that predate Max True. See Metzger, 2006 WL 2792435 at *4. While Metzger is relevant to the extent that it found the term "actual charges" to be ambiguous, the Court finds that Metzger is distinguishable as to its ultimate conclusion that an ambiguous term in an insurance policy must be strictly construed in favor of the insured.

Plaintiff argues that the phrase "actual charges" is facially ambiguous, because it is susceptible to at least two reasonable interpretations. Plaintiff asserts that "actual charges" could mean "(1) the greater billed amounts that a provider charges on the patient's bill, invoice or statement (i.e., "billed" or "pre-negotiated" charges); or (2) the lesser discounted amounts negotiated between the provider and the patient's other, unrelated group or major-medical insurance . . . ." Dkt. # 50, at 7. Defendant responds that the Policy insures plaintiff for "loss incurred," and plaintiff's interpretation of "actual charges" would require defendant to pay amounts beyond those actually accepted by plaintiff's medical providers. Both parties engage in a certain amount of unnecessary hyberbole, and the issue before the Court is actually quite simple. If plaintiff is correct that "actual charges" is subject to more than one reasonable interpretation, the doctrine of reasonable expectations should be applied, and the Court must determine if an objectively reasonable insured in plaintiff's position would have believed that actual charges means the greater billed amounts. On the other hand, if "actual charges" is unambiguous and is limited only to amounts accepted by providers from a group or major medical insurer, the Court should not apply the doctrine of reasonable expectations and must interpret the unambiguous language of the Policy as a matter of law. When making this determination, the Court will refer only to the factual allegations of defendant's counterclaim and the documents incorporated into the counterclaim.

As defendant argues, the term "actual charges" must be interpreted in light of the entire contract. Defendant acknowledges that the Policy is not a standard healthcare policy that provides for the payment of benefits to plaintiff's providers. Dkt. # 10, at 11. Instead, the Policy provides benefits directly to plaintiff and he is "free to use these monies for any purpose." Dkt. # 10-3, at 2. Defendant does not allege that it is a party to any agreement with plaintiff's providers under which

the providers have agreed to accept a reduced rate from defendant. Even if plaintiff's providers were willing to accept something less than full payment from a group or major medical insurer, it is not reasonable to infer from the allegations of the counterclaim that plaintiff's providers reduced their bills to him due to the Policy. This suggests that the "actual charges" were not limited to the amounts plaintiff's providers would accept from a separate group or major-medical insurer. Defendant's conduct as alleged in the counterclaim provides further support for a finding that "actual charges" is ambiguous. From October 2001 to January 27, 2006, defendant interpreted "actual charges" to mean the amount billed by plaintiff's provider as reflected in the bills submitted by him. On January 27, 2006, defendant informed plaintiff that it had revised its claim procedures and would pay plaintiff only for the amount accepted by providers from a primary healthcare insurer. While defendant may call this a revision in claim procedures, it also reflects a change in its interpretation of "actual charges." This strongly suggests that "actual charges" is subject to more than one reasonable interpretation and casts doubt on defendant's argument that its interpretation of "actual charges" is the only reasonable interpretation. It would be different if defendant had amended Policy language, but the allegations of defendant's counterclaim clearly reflect that defendant changed the interpretation of existing Policy language instead of amending the Policy itself.

The Court finds that the term "actual charges" is ambiguous as that term is used in the Policy. It could reasonably be construed to mean that defendant will pay plaintiff only that amount accepted by a group or major medical insurer with which the provider has agreement. However, "actual charges" could also mean that amount actually billed to plaintiff and that he is expected to pay absent a provider's agreement with a third-party insurer. Plaintiff has cited legal authority

showing that other courts have found the phrase "actual charges" to be ambiguous. See Guidry v. American Public Life Ins. Co., 512 F.3d 177 (5th Cir. 2007); Ward v. Dixie Nat'l Life Ins. Co., 257 Fed. Appx. 620 (4th Cir. Nov. 29, 2007); Hodges v. American Fidelity Assur. Co., 2008 WL 723994 (S.D. Miss. Mar. 17, 2008); Conner v. American Public Life Ins. Co., 448 F. Supp. 2d 762 (N.D. Miss. 2006). Although this precedent is from jurisdictions other than Oklahoma, it is relevant to show that "actual charges" may be subject to more than one reasonable interpretation. Defendant has cited one case, Claybrook v. Central United Life Ins. Co., 387 F. Supp. 2d. 1199 (M.D. Ala. 2005), finding that "actual charges" unambiguously means the amount accepted by the plaintiff's medical provider as full payment pursuant to an agreement with a group health insurer, but the Court finds that Claybrook reaches a result that is inconsistent with interpretation of the term "actual charges" under Oklahoma law. At least one other federal district court within the state of Oklahoma has found that "actual charges" is ambiguous as a matter of Oklahoma law, see Metzger, 2006 WL 2792435 at *4, and the Court agrees with Metzger's interpretation of Oklahoma law on this issue.

The Court must next determine how a reasonable person in the insured's position would interpret the term "actual charges." To limit its liability under an insurance policy, an insurer "must employ language that clearly and distinctly reveals its stated purpose" and "unclear or obscure clauses in an insurance policy will not be permitted to defeat coverage." Spears, 73 P.3d at 868. A reasonable insured would clearly understand the term "actual charges" to mean the amount stated on a bill he or she receives from a provider. It is the insurer, not the insured, who may negotiate with a provider for a lower payment and, even if a provider accepts a lesser amount pursuant to an agreement with certain insurance companies, it is the insurer's, rather than the insured's, job to negotiate for a reduced bill. The insured has little involvement with the determination of the final

amount of the bill, and it is not reasonable to assume that the insured is even aware that a provider may accept an amount less than is stated on the bill. As defendant notes, "actual charges" is used throughout the Policy, but defendant did not provide a definition of "actual charges" in the Policy. It is not unreasonable for the Court to construe this oversight against the defendant. For defendant to achieve its desired interpretation of "actual charges," it must amend the Policy to make it clear to the insured that "actual charges" means only those charges accepted by a provider from a group health insurer with which the doctor has an agreement. As a matter of contract interpretation and without reference to § 3651, the Court finds that an insured would reasonably expect Life Investors to pay the full amount stated on the bill, rather than a lesser amount that may or may not be accepted by the provider from a separate insurer.

**V.**

This ruling does not dispose of defendant's counterclaim in its entirety. The Oklahoma Legislature has passed a statute providing a definition of "actual charges," and this statute was effective after November 1, 2006. OKLA. STAT. tit. 36, § 3651. Under Oklahoma law, this definition is incorporated into the Policy as a matter of law. See Embry v. Innovative Aftermarket Systems L.P., 198 P.3d 388, 393 n.19 (Okla. Civ. App. 2008) ("It may be noted that, under Oklahoma law, insurance policies are issued pursuant to statutes, and the provision of those statutes are given force and effect as if written into the policy."); Graham v. Travelers Ins. Co., 61 P.3d 225, 229 (Okla. 2002) (same). Plaintiff has reserved any argument as to the applicability of § 3651. However, if the statute is applicable, defendant's practice of limiting payments under the Policy to a lesser amount accepted by a provider as full payment may be permissible. The Court will this matter for a status

conference to determine what issues remain for resolution in light of this Opinion and Order and how the parties intend to proceed with their claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Judgment on the Pleadings with Brief in Support (Dkt. # 50) is **granted**. Plaintiff's Motion to Dismiss Defendant's Counterclaim for Declaratory Relief and Combined Brief in Support (Dkt. # 75) is **denied**.

**IT IS FURTHER ORDERED** that this case is set for a **status conference on August 4, 2009 at 9:30 a.m.**

**DATED** this 17th day of July, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT