**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DENNY LINDLEY, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) Case No.   08-CV-379-CVE-PJC |
| | ) |
| LIFE INVESTORS INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
|        Defendant. | ) |

**OPINION AND ORDER**

Before the Court is Plaintiff's Seventh Motion to Compel Information Concerning Defendant's Knowledge and Understanding of Steerage Discounts Through the Marketing of Other Major Medical Insurance Products by Defendant (Dkt. #157). The Court heard oral arguments on the motion on November 4, 2009.

Plaintiff Denny Lindley moves to compel Defendant Life Investors Insurance Company of America ("Life Investors") to produce all documents responsive to Request Nos. 17, 21, 22 and 39. The subject requests and responses are set forth below:

> **REQUEST NO. 17**: Produce a specimen of every group health or major medical insurance policy that you have sold, issued, underwritten, or administered in Oklahoma during the last fifteen (15) years.
> **RESPONSE**: Life Investors objects to this request as grossly overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence because it seeks documents relating to policies that are not at issue in this case and outside the time period relevant to this action. Life Investors further objects to the request as irrelevant to the extent it seeks documents relating to policies other than the supplemental cancer insurance policy at issue in this case. Life Investors further objects to the request of policies "sold, issued, administered, underwritten, assumed or handled in the state of Oklahoma" as irrelevant because the plaintiff was issued an Arkansas policy form. Subject to the foregoing general and specific objections, Life Investors has already produced a specimen copy of policy form BPC530AR. See LIICA 00231 - LIICA 00261.

       **REQUEST NO. 21**: Produce each Document Relating to each Agreement between You and any Healthcare Provider, Preferred Provider Organization, Health Maintenance Organization or other Person engaged in the business of providing, facilitating or administrating managed health care that obligates any Person to fix, cap, discount, forgive, disavow or otherwise reduce the amount of monetary remuneration they would otherwise accept as payment for Healthcare Services.
       **RESPONSE**: Life Investors objects to this request as vague and difficult to understand. Life Investors requests clarification of this document request.

       **REQUEST NO. 22**: Produce each Document Relating to any manuals, memorandums, policy statements, inter-office, inter-departmental or inter-company correspondence, industry journals, trade magazines or other writing that was authored by any of Your employees, officers, directors or agents that Relates to the existence, ramifications, creation, administration, advantages or disadvantages of Preferred Provider Organizations, Health Maintenance Organizations or other Persons engaged in the business of providing, facilitating or administrating managed health care.
       **RESPONSE**: Life Investors objects to this request as vague and difficult to understand. Life Investors requests clarification of this document request.

       **REQUEST NO. 39**: Produce each Document that Relates to each Agreement within the preceding fifteen (15) years, between You and any Healthcare Provider, Preferred Provider Organization, Health Maintenance Organization or other Person engaged in the business of providing, facilitating or administrating managed health care that obligates any Person to fix, cap, discount, forgive, disavow or otherwise reduce the amount of monetary remuneration they would otherwise accept as payment for Healthcare Services.
       **RESPONSE**: Life Investors objects to this request as vague and difficult to understand. Life Investors objects to this request as duplicative of Request No. 21. Life Investors requests clarification of this document request.

At the November 4th hearing, Lindley clarified that these requests boil down to a specimen of every group health and major medical insurance policy that Life Investors sold in Oklahoma as well as each agreement it entered into with a Preferred Provider Organization ("PPO") or Health Maintenance Organization ("HMO") in Oklahoma in which discounts were contemplated in that agreement over the past 15 years. Lindley contends that he is entitled to this discovery because Life Investors asserts it acted reasonably in 2006 when it changed its

interpretation of actual charges from "billed" to "discounted" charges, in part, because it was unaware that medical providers routinely reduced their charges in exchange for steerage of patients from major medical insurance companies.

Life Investors argues that it has never denied its knowledge of steerage in prior pleadings, nor has it claimed that it discovered steerage in 2005. Rather it previously argued:

> In 2004, Life Investors began to investigate the causes of premium rate increases for its policyholders and discovered that it was overpaying claims for "actual charges." Life Investors had begun paying claims in excess of the actual charges because insureds were submitting, and its claims examiners were accepting as proof of loss, "statements" from healthcare providers which were not genuine "bills" and which contained "list" prices instead of the actual amounts being paid to and accepted by the providers as payment for their services.

*Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings*, p. 8 (Dkt. #69). Thus, Lindley cannot show the requested documents are relevant.

Lindley concedes that Defendants never actually wrote the words "Defendant hereby disclaims all knowledge of steerage discounts" in a prior pleading. But Life Investors has stated that "'changes in healthcare billing practices' which occurred over time were responsible for the difference between 'list prices' and the prices that healthcare providers were 'accepting as payment in full.'" *Reply*, p. 2 (Dkt. #213).

It is well-established that discovery under the Federal Rules is limited only by relevance and burdensomeness. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). Trial courts have broad discretion in managing discovery matters and are subject to review only for abuse of discretion. *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir. 1981).

Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not

privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004)(citation omitted). A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.*

When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan. 2003) (citation omitted).

Although the Court understands the distinction Life Investors is attempting to make between its knowledge of "steerage agreements" and its knowledge of paying "list prices," the Court finds the distinction is not one of relevance. Clearly, there is enough of a link between the existence of steerage agreements and the subsequent creation of "discounted" and "list" prices to raise an inference that Life Investors' knowledge of steerage agreements since 1994 evidences Life Investors' discovery of the "lack of transparency in healthcare billing practices that had developed over time, and the resulting impact of exorbitant fictitious 'list' prices that prompted [Life Investors] to update its claim forms and procedures, " prior to 2005. *Response*, p. 12 (Dkt.

# 180).

Accordingly, the Court **GRANTS** Plaintiff's Seventh Motion to Compel Information Concerning Defendant's Knowledge and Understanding of Steerage Discounts Through the Marketing of Other Major Medical Insurance Products by Defendant, as orally amended at the November 4 hearing. (Dkt. #157). As the requested documents are relevant, the Court orders Life Investors to produce on or before November 30, 2009 specimens of every group health and major medical insurance policy it sold in Oklahoma over the past 15 years as well as each agreement Life Investors entered into with an Oklahoma PPO or HMO in which discounts were contemplated in that agreement over the past 15 years.

IT IS SO ORDERED, this 19th day of November , 2009.

_____
Paul J. Cleary
United States Magistrate Judge