## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

DENNY LINDLEY,                           )
                                         )
                    Plaintiff,           )
                                         )          **BASE FILE**
v.                                       )          **Case No. 08-CV-0379-CVE-PJC**
                                         )
LIFE INVESTORS INSURANCE                 )          **Consolidated with**
COMPANY OF AMERICA,                      )          **Case No. 09-CV-0429-CVE-PJC**
now known as TRANSAMERICA LIFE           )
INSURANCE COMPANY,                       )
                                         )
                    Defendant.           )


## OPINION AND ORDER

Now before the Court are Life Investors Insurance Company of America's Motion for

Summary Judgment (Dkt. # 185) and Plaintiff's Motion for Partial Judgment on the Pleadings with

Respect to the Applicability of §3651 with Brief in Support (Dkt. # 256).[1] Defendant asserts that

it relied on a reasonable interpretation of OKLA. STAT. tit. 36, § 3651 when reducing the amount paid

---

[1]     Plaintiff's second motion for judgment on the pleadings (Dkt. # 256) reasserts and expands
on arguments raised in his response to defendant's motion for summary judgment. Plaintiff
had ample opportunity to raise these arguments in his response and sur-reply to defendant's
motion for summary judgment.  He could also have raised the same arguments in his initial
motion for judgment on the pleadings.  See Dkt. # 50.  Plaintiff's second motion for
judgment on the pleadings appears to be an attempt to supplement his response to
defendant's motion for summary judgment. However, he filed a motion (Dkt. # 209) under
Fed. R. Civ. P. 56(f) for leave to supplement his response to defendant's motion for
summary judgment, and, although motion was denied, this was the appropriate way to
request leave to supplement his response.  Although Fed. R. Civ. P. 12(c) does not prohibit
the filing of a second motion for judgment on the pleadings, it is preferable for a party to
raise all issues in a single motion for judgment on the pleadings.   Even though it appears
that plaintiff's second motion for judgment on the pleadings was an attempt to supplement
his summary judgment response, the Court will consider all arguments raised in this motion
as objections to defendant's motion for summary judgment.

on plaintiff's claims under a cancer-only insurance policy, and seeks summary judgment on plaintiff's breach of contract and bad faith claims.

## I.

On June 16, 1995, Denny Lindley applied for an individual cancer expense policy from Bankers United Life Assurance Company (Bankers United), and his application was approved. Bankers United issued policy number 0G1134364 (the Policy) to plaintiff, effective July 1, 1995. The Policy was issued on a form approved by the Arkansas Insurance Department, but Lindley worked in Oklahoma and the Policy was delivered to him in Oklahoma.  Bankers United merged into Life Investors Insurance Company of America (Life Investors), now known as Transamerica Life Insurance Company (Transamerica), Life Investor's successor-in-interest.[2]  See Dkt. # 140, at 1; Dkt. # 200, at 2.  The Policy is guaranteed renewable for Lindley's life and renews on "[t]he date on which the next premium (Renewal Premium) is due."  Dkt. # 186, Ex. 1(B), at 4.  Lindley chose to make monthly premium payments and his policy renewed every month on the date payment was due.  Id. at 3.  The Policy provides a schedule of payment for some types of cancer treatment but, for many other types of treatment, the insurer's obligation to pay is based on the "actual charges" of the medical provider.  See id. at 7 ("we will pay the actual charges for drugs and medicine given to you while Hospital Confined."); id. at 8 ("We will pay the actual charges by your attending Physician . . . who performed surgery. . . "); id. ("We will pay the actual charges for cancericidal

---

[2]     To maintain consistency with prior opinions and orders and the parties' filings, the Court will refer to the defendant as "Life Investors" unless a specific action was taken by Transamerica.

2

chemical substances including their administration.").[3]  The Policy does not operate like a standard health insurance policy where payment is made by the insurer directly to the healthcare provider. Instead, payment is made to the insured and the insured has the duty to provide "proof of loss" for each claim submitted under the Policy.  Id. at 7.  The Policy does not specifically define what documents constitute "proof of loss" and it does not define "actual charges."

Life Investors states that it paid the amount stated on a patient's bill as the "actual charges" until 2006, but changed it procedures for paying claims due to changes in the billing practices of the healthcare industry.  Life Investors claims that healthcare providers stopped issuing "genuine" bills and "billing practices in the healthcare industry began to change and lose their transparency."  Dkt. # 186, at 14.  In 2006, Life Investors changed its claims handling procedures based on a new interpretation of the term "actual charges."  On January 27, 2006, Life Investors sent Lindley a letter stating:

> Doctors, hospitals, and other healthcare providers will often send informational statements to the patient that contain "list" prices or "standard" rates for their medical services.  This happens most frequently if the patient is covered by Medicare or a group health insurance plan.  These statements are not true "bills" and do not reflect the actual amounts being paid to and accepted by the healthcare provider as payment in full.  Consequently, these types of informational statements do not reflect the "actual charges" being incurred and paid.  The amounts healthcare providers are actually charging and accepting as payments are often significantly less than the amounts listed on these informational statements.
>
> The Company has revised its claim documents to make sure that the necessary information and documentation are included to support a claim for benefits based on actual charges under your policy.  We have enclosed a copy of the updated Claim Package and instructions for submitting a claim.  The new claim documents <u>must</u> be submitted for all medical services provided on or after April 1, 2006.  As discussed in the instructions, you must submit the Explanation of Benefits or other

---

[3]  This is a partial list of references to the term "actual charges," and the Policy consistently uses this term when defining the insurer's obligation to pay under the Policy.

3

> documentation which shows the amount of the actual charges being paid to and
> accepted by the healthcare provider as payment in full for the medical services
> rendered.  If the information submitted is not sufficient, the Company may request
> more information.

Dkt. # 186, Ex. 1(D), at 2-3.  The result of this change was that Life Investors would pay only the

"actual charges being paid to and accepted by the healthcare provider as payment in full for the

medical services," rather than the amount stated on the bill received by the patient.  Id. at 3.  Life

Investors required an insured to submit a claim package containing "(1) a Claimant's Statement, (2)

Attending Physician Statement, (3) Fraud Warning Statement, and (4) an Authorization for the

Release of Health Information."  Dkt. # 186, Ex. 5, at 3.  Life Investors also requested information

showing the actual charges for the treatment, including any payments or adjustments made by an

insured's primary healthcare insurer.  Id.

On November 1, 2006, a new statute took effect in Oklahoma that defined the term "actual

charge" to meant "the amount actually paid by or on behalf of the insured and accepted by a

provider for services provided," and any insurance policy using the term "actual charges" must use

the definition provided by this statute.  See OKLA. STAT. tit. 36, § 3651.  The statute was not

intended to apply retroactively to any insurance policies that had been fully executed, and it applied

"only to insurance policies delivered, issued for delivery, or renewed on or after" November 1, 2006.

Id.  The statute also applied to an insurance policy only if the policy did not define "actual charges."

Lindley was diagnosed with prostate cancer in February 2001 and began submitting claims

for reimbursement of his medical expenses for cancer treatment.  Until November 2008, plaintiff's

primary health insurer was Preferred Community Choice PPO and he had secondary health

insurance with HealthChoice Plan Services (HealthChoice).  Lindley turned 65 in November 2008,

and his primary health insurance became Medicare and he retained his secondary health insurance

4

with HealthChoice.  Life Investors paid the amount billed by plaintiff's medical providers until April 1, 2006, but requested additional information about the "actual charges" for the services provided after this date.  Lindley claims he received cancer treatment between April 1 and November 1, 2006, but did not submit a claim to Life Investors until he obtained legal advice about Life Investor's revised claim handling procedures.[4]  Dkt. # 210, at 16.  Lindley submitted a claim on March 5, 2007 for treatment that occurred on May 30 and August 24, 2006, and there is no dispute that he did not provide all of the information required by the new claims handling procedures.  Lindley did not provide information about his primary health insurance and submitted only CMS Form 1500s showing how much his provider attempted to bill his primary health insurer for services.  The parties do not dispute that the primary insurer may have paid less than the amount listed on the bill as full payment for the services provided.  The CMS Form 1500s are not bills and Lindley was not obligated to pay the amounts listed on the bill; the CMS Form 1500s sent to Lindley's primary healthcare insurer by his provider listed the services provided and did not show how much Lindley's insurer actually paid for the services.  Dkt. # 186, Ex. 4, at 4.  Life Investors has retained an expert, Marc Chapman, to examine the CMS Forms1500s submitted by Lindley and the billing records of Lindley's healthcare providers.  Chapman found that Lindley's providers accepted substantially less that the amounts listed on the CMS Form1500s as full payment.  He reviewed the claims submitted by Lindley from March 5, 2007 to June 22, 2009.  He found that Lindley requested payment of

---

[4]  The statement is not supported by an affidavit and is simply a statement in a brief.  Under LCvR 7.2(j), "[f]actual statements . . . appearing only in the brief shall not be deemed to be a part of the record in the case . . . ."  The Court notes plaintiff's statement that he refrained from filing a claim for reimbursement until he obtained legal advice but, even if the Court were to accept this statement as true, it has no legal significance to any issue before the Court.

$29,511 for medical services based on his CMS Form 1500s, but his providers actually accepted $8,832.62 as full payment. Id. at 5-6. Lindley was not obligated to pay the difference between the amount listed on the CMS Form 1500s and the amount actually accepted by his healthcare provider as full payment.

Lindley filed this case on May 30, 2008 in Tulsa County District Court, Oklahoma, and Life Investors removed the case to this Court. Plaintiff filed a motion to amend his complaint to include class allegations, but defendant objected on the ground that plaintiff's motion was untimely because it was filed after the deadline to amend pleading had already expired. Instead of waiting for a ruling on his motion to amend, plaintiff filed a new lawsuit in Oklahoma County District Court requesting class certification on claims of breach of contract and bad faith against Transamerica, and Transamerica removed the case to the United States District Court for the Western District of Oklahoma. See Lindley v. Transamerica Life Insurance Company, 09-CV-429-CVE-PJC (Lindley II). Transamerica asked the Western District to transfer Lindley II to this Court, and the Western District granted Transamerica's motion. Life Investors and Transamerica filed separate motions to consolidate the two cases. The undersigned granted Life Investor's motion and the cases have been consolidated for all future proceedings. Dkt. # 160. Life Investors also filed a motion to stay proceedings on plaintiff's class allegations in Lindley II, because Life Investors reached a nationwide class settlement in a separate lawsuit and the members of plaintiff's proposed class would be members of the settlement class. See Dkt. # 164. The Court granted the motion and proceedings on plaintiff's class allegations are stayed. Dkt. # 200.

While these procedural matters were being litigated, plaintiff filed a motion for judgment on the pleadings seeking a determination that the term "actual charges" was ambiguous as a matter of

Oklahoma common law, and asserted that Life Investors was obligated to pay the full billed amount, even if a medical provider accepted less than the billed amount as full payment, before § 3651 took effect. Dkt. # 50. Defendant argued that "actual charges" clearly and unambiguously referred only to the amount actually accepted by a medical provider as full payment. Dkt. # 69. The Court found that "actual charges" was ambiguous as that term was used in the Policy, and granted plaintiff's motion for judgment on the pleadings as to insurance claims for treatment before November 1, 2006. Dkt. # 140. However, the Court declined to consider plaintiff's arguments that § 3651 did not apply to the Policy or that the statute was unconstitutional under the Contracts Clause of the United States Constitution.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that it was obligated to follow Oklahoma law when determining actual charges for the insurance claims submitted by plaintiff and, as the Policy does not define actual charges, the statutory definition provided by § 3651 controls and actual charges means the amount actually accepted by a medical provider as full payment.  Plaintiff responds that the statute is ambiguous and, if it is not read in his favor, constitutes a retroactive impairment of his rights under the Policy in violation of the Contracts Clause of the United States Constitution.  Plaintiff also argues that defendant relied on the § 3651 without a good faith belief that it applied to the Policy or was constitutional, and defendant acted in bad faith by reducing plaintiff's claims to anything less than the higher amount billed by his medical providers.

### A.

The parties dispute the applicability of § 3651 to the Policy.  Defendant argues that § 3651 applies to the Policy following the first renewal after November 1, 2006, but plaintiff argues that his

8

guaranteed renewable policy is governed by the law as it existed when the Policy was executed.  The statute, in full, states:

> A.  As used in an individual or group specified disease insurance policy, "actual charge" or "actual fee" means the amount actually paid by or on behalf of the insured and accepted by a provider for services provided.  Insurance policies that use these terms must use them as defined in this section.

> B.  Except as provided by subsection C of this section, the change in law made by this section applies only to insurance policies delivered, issued for delivery, or renewed on or after the effective date of this act.  An insurance policy delivered, issued for delivery, or renewed before the effective date of this act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.

> C.  This section applies to an insurance policy in effect on the effective date of this act only if the policy does not define "actual charge" or "actual fee."

OKLA. STAT. tit. 36, § 3651.  Plaintiff raises numerous arguments attacking the applicability of the statute to the Policy or the validity of the statute itself: (1) the statute is facially ambiguous and must be construed in his favor;[5] (2) the Policy is guaranteed renewable and statutes enacted after execution of the contract have no effect on the Policy; (3) defendant may not request information about other insurance to coordinate benefits; (4) defendant is discriminating against plaintiff by

---

[5]     Plaintiff raises an additional argument in his second motion for judgment on the pleadings. He claims that § 3651 is facially ambiguous, because the two sentences of § 3651.B are inherently contradictory.  Dkt. # 256, at 7.  Although plaintiff briefs this argument at length, the Court finds no conflict between the two sentences of § 3651.B.  The first sentence clearly states that § 3651 applies to all policies "delivered, issued for delivery, or renewed" after November 1, 2006, and the second sentence states that any insurance policy "delivered, issued for delivery, or renewed" before November 1, 2006 is governed by the law in effect when any one of those events occurred.  There is no reasonable way to read this language as ambiguous.  Since the statutory language is clear and unambiguous, there is no reason to apply additional tools of statutory construction as suggested by plaintiff.  In any event, the Court has determined that plaintiff's insurance claims for medical treatment before November 1, 2006 are not subject to § 3651, and plaintiff's argument that defendant is asking the Court to retroactively apply § 3651 is unfounded.

reducing payment because he has primary health insurance; (5) the statute is invalid under the Contracts Clause; (6) defendant is not a party to steerage agreements between the primary health insurer and plaintiff's medical provider and may not reduce its payment to less than the billed amount; and (7) insurance companies lobbied for the passage of the statute and it was enacted for an improper purpose.

Plaintiff argues that the statute is facially ambiguous under Oklahoma law, and must be construed in his favor to avoid a conflict with other Oklahoma insurance statutes.  The primary purpose of statutory interpretation under Oklahoma law "is to ascertain the intent of the legislature and if possible give effect to all its provisions."  Bed Bath & Beyond, Inc. v. Bonat, 186 P.3d 952, 955 (Okla. 2008).  A court must give statutory language "a plain and ordinary meaning, unless it is clear from the statute that a different meaning was intended by the Legislature."  Fanning v. Brown, 85 P.3d 841, 845-46 (Okla. 2004).  The plain meaning of a statute controls if the statutory language is clear and unambiguous, and a court may not invoke other principles of statutory construction if the statute is unambiguous.  Samman v. Multiple Injury Trust Fund, 33 P.3d 302, 307 (Okla. 2001). An ambiguity may arise from the language of the statute itself or a conflict between the statute and other laws.  Cox v. Dawson, 911 P.2d 272, 276 (Okla. 1996).  However, a party may not create an ambiguity by demanding a strained reading of the statutory language or by unnecessarily creating a conflict with other statutes.  Crutchfield v. Marine Power Engine Co., 209 P.3d 295, 305 (Okla. 2009).

Contrary to plaintiff's arguments, the Court finds that § 3651 is facially unambiguous and must be interpreted solely considering the statutory language.[6] Section 3651 defines "actual charge" to mean the amount actually paid on behalf of the insured and accepted by a medical provider as full payment, and there is nothing ambiguous about this language.  Applying the plain and ordinary meaning of the statutory language, it is clear that the Oklahoma Legislature intended to limit payment under any insurance policy using the term "actual charge" to the amount accepted by a medical provider as full payment. Plaintiff claims that medical providers routinely accept steerage, which he defines as "actively encouraging plan participants to seek the services of the providers in the PPO by such means as financial incentives," and asserts that steerage is a form of non-cash benefit provided by a primary health insurer to a medical provider in exchange for discounted billing rates.  Dkt. # 210, at 22 n.9.  He argues that the existence of steerage creates an ambiguity because some insurers provide steerage benefits, while some do not, and the Oklahoma Legislature could not have intended to give a supplemental insurer like defendant the benefit of a medical provider's agreement with a primary health insurer when the supplemental insurer does not provide steerage. This a classic example of a strained construction of statute, and the Court will not second-guess the Oklahoma Legislature by inferring that it intended to differentiate between insurers that do or not provide steerage to medical providers.  The plain language of the statute applies to all insurance policies using the term "actual charge" and there is no reason to find an ambiguity in the statute

---

[6]     This finding disposes of plaintiff's argument that insurance companies improperly lobbied for passage of § 3651, and the Court will not consider evidence outside of the statute itself when construing the statutory language.  In any event, plaintiff's allegations that § 3651 "was designed to cheat Oklahoma insureds and to impair their guaranteed contractual rights" are unsubstantiated, and he has not cited any authority suggesting that the Court may consider extrinsic evidence when construing an unambiguous statute.  See Dkt. # 210, at 25-27.

based on the fact that some insurers offer and some medical providers accept steerage.  The clear intent of the statute is to limit payment, under a policy using the term "actual charge," to the actual amount the patient is obligated to pay, whether this is the full billed charge or a discounted amount obtained through the patient's primary health insurance.  There could be cases when the insured's medical provider does not accept a discounted amount from an insurer, and the patient is obligated to pay the full billed amount.  In such situations, the insurer would be obligated to pay the insured the amount stated on the bill.  However, the statute shows a clear legislative intent to prevent a patient with primary health insurance from receiving a windfall by recovering the difference between the higher billed amount and the actual amount accepted by the provider as full payment.

Plaintiff argues that § 3651 violates the Contracts Clause of the United States Constitution if the statute is interpreted to apply retroactively to his guaranteed renewable policy.  He argues that he is entitled to renew the policy indefinitely under the "exact" terms to which he originally agreed and, because "actual charges" has been construed in his favor due to an ambiguity, he must be paid the higher billed amount rather than the lesser amount actually accepted by his medical providers.  Plaintiff's argument is based on two assumptions.  First, he assumes that neither the insurer nor the Oklahoma Legislature may ever change the Policy or the interpretation of the Policy's language because it is a "guaranteed renewable" policy.  To support this argument, plaintiff cites a decision by the Wisconsin Court of Appeals, Reserve Life Insurance Co. v. La Follette, 323 N.W.2d 173 (Wis. Ct. App. 1982), and OKLA. STAT. tit. § 4405(C).  Second, plaintiff assumes that he has a "vested" contractual right to receive the higher billed amount and any impairment of this right violates the Contracts Clause.

12

There may be limits on an insurer's power to unilaterally amend a guaranteed renewable policy, but plaintiff has not shown that the insurer may not incorporate new legislative enactments defining a previously undefined and ambiguous term into a renewed insurance policy as a matter of Oklahoma law.  Plaintiff cites <u>Reserve Life Insurance</u> for the proposition that a renewal of a guaranteed renewable insurance policy is treated as a continuation of the original insurance policy, and statutes passed after execution of the original policy do not apply.  <u>See</u> <u>Reserve Life Ins. Co.</u>, 323 N.W.2d at 177.  However, the Wisconsin Court of Appeals found that a statute enacted after the original insurance policy was issued <u>applied</u> to renewals of guaranteed renewable policies, because the statute did not constitute a substantial impairment of the insurer's rights under the insurance policy.  <u>Id.</u> at 178.  The Oklahoma Supreme Court has not spoken on this issue and it is not clear how the Oklahoma Supreme Court would treat a renewal of a guaranteed renewable policy.  The Tenth Circuit has held that Oklahoma follows the general rule that "[a]ll statutes in force at the time the contract or insurance is made (or renewed) will be considered to be part of the contract provided that such statutes bear on the subject matter of the contract and define the rights and liabilities of the parties to the agreement."  <u>MGA Ins. Co. Inc. v. Fisher-Roundtree</u>, 159 F.3d 1293, 1296 (10th Cir. 1998).  Plaintiff cites OKLA. STAT. tit. § 4405(C), but this statute simply permits an insurer to issue a "guaranteed renewable" policy under some circumstances and does not provide any assistance in determining if a subsequent legislative enactment may modify the terms of a guaranteed renewable policy.  The Court finds it is unnecessary to resolve this issue because § 3651 expressly applies to "renewals" of insurance policies after the effective date of the statute, and the Oklahoma legislature addressed this issue when it enacted § 3651.  The authority cited by plaintiff does not show that the Oklahoma Legislature lacked the authority to pass a statute that prospectively applied to a renewal

of his policy and, given the clear legislative intent to apply the statute to renewals of insurance policies, the Court finds that § 3651 applies to renewals of the Policy after November 1, 2006.

Plaintiff next argues that application of § 3651 to his guaranteed renewable insurance policy would impair his vested contractual right to receive the higher billed amount for medical services, and § 3651 violates the Contracts Clause.  He relies on the Court's prior opinion and order finding that the term "actual charges" was ambiguous and construing the term in his favor.  He argues that § 3651 impairs his vested right to receive the higher billed amount for services, because this was part of his contract at the time it was executed and § 3651 constitutes a substantial impairment of his contractual rights.  Defendant responds that § 3651 is presumed to be constitutional and the statute does not retroactively impair any obligation owed to plaintiff under the Policy in violation of the Contracts Clause.

The Contracts Clause of the United States Constitution prohibits a state from enacting a "Law impairing the Obligation of Contracts."  U.S. CONST. art. I, § 10.  The Contracts Clause is not construed literally to mean that a state may never impair a party's contractual rights, but is considered within its historical context to create a limitation on a state's power to extinguish pre-existing contractual relationships.  Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 432-33 (1934).  When considering a Contracts Clause challenge, "the threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'"  Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244 (1977)).  To determine if a state statute constitutes a substantial impairment of a party's contractual right, a court must consider "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and

whether the impairment is substantial." Stillman v. Teachers Ins. & Annuity Ass'n College Retirement Equities Fund, 343 F.3d 1311, 1321 (10th Cir. 2003) (quoting Energy Reserves Group, 459 U.S. at 411-12). If a statute impairs a substantial right under an existing contract, the state must have a "significant and legitimate public purpose behind the regulation . . . ." Energy Reserves Group, 459 U.S. at 411-12. Finally, if the state had a significant and legitimate purpose for enacting the statute, a court must determine whether the state's "adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 505 (1987) (quoting Energy Reserves Group, 459 U.S. at 412). However, a reviewing court must "properly defer to legislative judgment as to the necessity and reasonableness of a particular measure," as long as the state is not a party to the contract. Id.

There is no dispute that the parties have a contract and that § 3651 affects plaintiff's right to payment under that contract, but the parties disagree as to whether § 3651 substantially impairs plaintiff's rights under the Policy. Plaintiff relies heavily on the Court's July 17, 2009 opinion and order (Dkt. # 140) in an attempt to establish that he has a vested contractual right to receive the higher billed amount on his claims. However, the Court did not hold that plaintiff had a vested contractual right to recover money that he does not actually owe to his medical provider. The Court simply determined that the term "actual charges" was ambiguous and he had a reasonable expectation that his bills for cancer treatment would be fully paid. Dkt. # 140, at 13-14. Section 3651 removes any ambiguity from the term "actual charges" and plaintiff may not demand that he recover the higher billed amount now that the ambiguity has been clarified by the Oklahoma Legislature. It is also important to note that the Court's prior ruling was on a motion for judgment

15

on the pleadings, not a motion for summary judgment, and the Court accepted as true plaintiff's allegations that bills from his medical providers represented full payment of his expenses. Defendant has produced evidence that plaintiff's medical providers accepted significantly less than the amount stated on his medical provider's CMS Form 1500s between March 2007 and June 2009, and plaintiff did not provide this information to defendant.  The Court's prior opinion and order concerned the time period before November 1, 2006, and the Court did not rule that plaintiff had a vested right to recover the higher billed amount after § 3651 was enacted. Id. at 14.  Section 3651 clearly states that actual charges means the lesser amount accepted by a medical provider as full payment, rather than the higher amount billed to the patient, and it removes the ambiguity from the Policy.  While § 3651 is inconsistent with plaintiff's expectations, this does not show that the statute is a substantial impairment to a vested contractual right.  See Energy Reserves Group, 459 U.S. at 411 ("state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment").   Plaintiff has a right under the Policy to receive the "actual charges" for his cancer treatment and he is entitled to receive the full amount he is actually obligated to pay his medical providers, but it is difficult to see how denying him additional funds that he does not owe to his medical providers deprives him of a substantial right under the Policy.

Even if the Court were to assume that § 3651 constitutes a substantial impairment of plaintiff's contractual rights, the Court would not find that the statute violates the Contracts Clause. One legitimate purpose for a state to enact a statute that impairs a contractual right is to prevent one party from receiving windfall profits that could not have been foreseen when the contract was executed.  See United States Trust Co. of New York v. New Jersey, 431 U.S. 1 (1977).  The bills

16

relied upon by plaintiff when submitting his claims do not represent the amount he actually owes, and defendant has shown that this is not a unique situation under current medical billing practices. The Oklahoma Legislature could reasonably have been concerned that insurers were raising premiums to cover payments to insureds, such as plaintiff, for "billed" amounts greater than the amount actually accepted by his provider as full payment.  These additional payments to plaintiff are a windfall that are unnecessary to cover his actual medical expenses, and it is likely that defendant would have to raise premiums for all of its insured to continue to pay the higher billed amount to plaintiff and other similarly situated insureds.  Reducing premiums for a broad class of insureds is clearly a legitimate purpose related to the public purpose in enacting § 3651, and the Court would defer to the state's judgment to reduce premiums for all, rather than require defendant to make windfall payments to plaintiff.

Plaintiff argues that defendant's payment procedures constitute an illegal attempt to coordinate benefits when Lindley did not agree to coordination of benefits in the Policy.  However, the evidence does not suggest that defendant has attempted to "coordinate" benefits with plaintiff's primary insurers but, instead, it is trying to determine the correct amount to pay plaintiff under the Policy.  Coordination of benefits occurs when two or more insurers cover the same loss, and the general rule is that both insurers are treated as primary insurers and are obligated to pay the full amount of the loss, unless both policies specifically provide for coordination of benefits.  Naham v. Blue Cross & Blue Shield of Arizona, Inc., 885 P.2d 1113, 1119 (Ariz. Ct. App. 1994).  The Policy provides supplemental cancer-only coverage to plaintiff for cancer treatment, and defendant does not dispute that it is obligated to pay the full amount of the actual loss.  The issue raised by defendant's claims handling procedure is the amount of the loss, not which insurer will pay for the

loss. Plaintiff has not shown that defendant is doing anything other than attempting to determine the actual amount of his claim for cancer treatment, and defendant's claim handling policy does not constitute an improper coordination of benefits.[7]

Plaintiff argues that Life Investors may not reduce the amount of his claims due to his failure to provide irrelevant information, and he had no obligation to comply with the additional claims handling procedures implemented on April 1, 2006. Dkt. # 259, at 11. Under § 3651, information about the actual charges actually accepted by plaintiff's medical providers is not irrelevant and, quite to the contrary, is material to an insurer's payment of an insured's claim. In this case, plaintiff has not provided information to defendant about the amount his medical provider accepted as full payment. The Policy clearly requires plaintiff to submit proof of loss with his claims, and defendant may reasonably require plaintiff to provide information beyond the CMS Form 1500s sent to his primary health insurer as additional proof of loss.

Finally, plaintiff argues that at least two of his insurance claims were for medical services provided between April 1 and November 1, 2006, and defendant breached the contract by failing to pay the billed amount for each claim. However, the Policy limits when a claim may be made for covered services:

> Written notice of claim must be given to us within sixty days (60) days after the occurrence or commencement of any loss covered by this policy, or as soon as thereafter as is reasonably possible.

---

[7]     Plaintiff also argues that defendant is barred from reducing the amount of his claims under OKLA. STAT. tit 36, § 1219.3, which provides that "[a]n insurer . . . shall not reimburse a health care provider on a discounted basis for covered services that are provided to the insured unless . . . [t]he insurer . . . has contracted" with the health care provider. However, defendant pays plaintiff directly and does not reimburse plaintiff's medical providers for covered services, and § 1219.3 does not apply.

Dkt. # 186, Ex. 1(B), at 16.  Plaintiff has submitted evidence that he received cancer treatment on

May 30 and August 24, 2006.  Dkt. # 210, Exs. 5 and 6.  Plaintiff did not submit a claim for this

treatment until March 5, 2007, and the time to submit the claims had already passed.  However, it

does not appear that Life Investors disputed payment based on the timeliness of the claim.  Thus,

the Court will not consider the timeliness of Lindley's claims under the Policy when determining

if Lindley's claims for medical services provided between April 1 and November 1, 2006 are

governed by § 3651.

As Life Investors notes in its motion for summary judgment, the key issue for coverage is

the "loss incurred."  See Dkt. # 186, at 11.  The policy is not a claims-made policy; it is a policy that

covers treatment during the Policy period.  Id.  Under Oklahoma law, the Policy is treated as an

occurrence policy and it is the date of the loss, not the date the claim is filed, that governs coverage

under the Policy.  Assoc. of County Comm'rs of Oklahoma v. Nat'l American Ins. Co., 116 P.3d

206, 211 (Okla. Civ. App. 2005).  This is also apparent from the notice provided to plaintiff of the

new claims handling procedure, which notifies plaintiff that "[t]he new claim documents must be

submitted for all medical services provided on or after April 1, 2006."  Dkt. # 186, Ex. 1(D), at 3.

Plaintiff's claim for medical treatment on May 30 and August 24, 2006 are governed by the Policy

in effect when the medical treatment was provided, and this treatment predated the enactment of §

3651.  Thus, defendant is not entitled to summary judgment on plaintiff's breach of contract claim

if the medical treatment was provided between April 1 and November 1, 2006, even if plaintiff did

not submit a claim until after November 1, 2006, but summary judgment should be entered in

defendant's favor on plaintiff's breach of contract claim for all insurance claims for medical treatment provided after November 1, 2006.[8]

## B.

Defendant argues that it denied plaintiff's claims for full payment of the amount stated on the medical bills based on a legitimate coverage dispute, and it is entitled to summary judgment on plaintiff's bad faith claim.  Plaintiff argues that defendant unreasonably relied on § 3651 as a basis to reduce payment on his claims, because it should have known that § 3651 did not apply to the Policy or was unconstitutional.  Even though the Court has found that defendant did not breach the contract and § 3651 is applicable to the Policy, plaintiff still argues that "the question of whether [d]efendant's reliance on §3651 was reasonable is a fact question for a jury."  Dkt. # 210, at 40.  He also argues that defendant acted in bad faith by denying his claims for medical treatment provied between April 1, and November 1, 2006, because it was required to construe an ambiguity in the Policy in his favor.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured."  Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1977). Violations of this duty gives rise to an action in tort.  Id.  "The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions."  Conti v. Republic Underwriters Ins. Co., 782 P.2d 1357, 1360 (Okla. 1989).  The Oklahoma Supreme Court and the Tenth Circuit have made clear that an insurer does not subject itself to a claim of bad faith merely

---

[8]     The Court has already determined that plaintiff should recover the higher billed amount for all medical treatment provided before § 3651 took effect. Dkt. # 140, at 14. Thus, it appears that there are no issues remaining as to plaintiff's breach of contract claim and it has been fully adjudicated.

by disputing coverage.  "The insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" Thompson v. Shelter Mut. Ins., 875 F.2d 1460, 1462 (10th Cir. 1989) (citing Manis v. Hartford Fire Ins. Co., 681 P.2d 760, 762 (Okla. 1984)). "The decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy.'" Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).  The Court can consider only the "facts known or knowable about the claim at the time the insured requested the insurer to perform its contractual obligation."  Sims v. Travelers Ins. Co., 16 P.3d 468,  471 (Okla. Civ. App. 2000); see also Timberlake Construction Co. v. United States Fidelity & Guaranty Co., 71 F.3d 335, 340-41 (10th Cir. 1995).  In order to succeed on a claim for bad faith, the plaintiff must be able to prove that the insurer's actions went beyond an act of simple negligence; however, it is not necessary to prove that the insurer acted recklessly to prove liability, even though recklessness is a requirement for punitive damages in a bad faith claim.  Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005).

The Court's review of plaintiff's bad faith claim must be segmented: (1) partial denial of claims for medical treatment before November 1, 2006; and (2) partial denial of claims for medical treatment after November 1, 2006.  The Court has found that defendant is obligated to pay the higher billed amount for claims for medical treatment provided before November 1, 2006, but § 3651 applies to renewals of the Policy after November 1, 2006 and defendant was obligated to pay

plaintiff only the lesser amount actually accepted by plaintiff's medical providers as full payment after that date.

Plaintiff argues that defendant knew that the term "actual charges" was ambiguous and failed to construe it in his favor, and this raises a genuine of issue of material fact as to defendant's knowledge that a legitimate coverage dispute existed.  Dkt. # 210, at 41 n.14.  When finding that "actual charges" as used in the Policy was ambiguous, the Court found that plaintiff and defendant had offered reasonable interpretations of the term.  Dkt. # 140, at 12-13.  Due to an ambiguity, the Court considered how a reasonable person in the insured's position would interpret the Policy language, and found that a reasonable insured would expect "actual charges" to mean the higher billed amount instead of the lesser amount actually accepted by a medical provider.  Id. at 13-14. Life Investors takes the position that no claims were submitted between April 1 and November 1, 2006, and does not address the viability of plaintiff's bad faith claim for insurance claims arising before November 1, 2006.  However, the Court has determined that the Policy is an occurrence policy and claims for medical treatment between April 1 and November 1, 2006 are not governed by § 3651.  Thus, defendant may not rely an ambiguity in the Policy to show that it partially denied plaintiff's claim based on a legitimate coverage dispute, nor may defendant rely on § 3651 as a basis to reduce payment for plaintiff's medical treatment between April 1 and November 1, 2006.  See Wolf v. Prudential Ins. Co. of America, 50 F.3d 793 (10th Cir. 1995) (an ambiguity in an insurance policy does not create a valid defense to a bad faith claim, because an insurer is deemed to understand rules of construction and should interpret ambiguous language in favor of the insured).  Thus, there is a genuine issue of material fact that precludes summary judgment on plaintiff's bad

faith claim as it concerns insurance claims for medical treatment between April 1 and November 1, 2006.

Plaintiff's primary argument concerning defendant's alleged bad faith after November 1, 2006 is that defendant unreasonably relied on § 3651 as a basis to reduce payment on his insurance claims. This argument has two prongs. First, plaintiff argues that defendant should have known that § 3651 was not applicable to the Policy. Second, he argues that defendant should have known the statute was invalid under state law or was unconstitutional. In either situation, he claims that defendant acted unreasonably by relying on the statute as a ground to partially deny his claims for benefits under the Policy. Defendant responds that it reasonably applied the statute to the Policy, and it had no obligation to pay the higher billed amount for plaintiff's claims based on the possibility that § 3651 would be declared invalid.

Plaintiff has failed to show that Oklahoma law concerning the effect of an intervening statute on a guaranteed renewable policy that actually renews after the effective date of the statute is sufficiently clear that defendant should have known the statute did not apply to the Policy. To the contrary, plaintiff has not cited any Oklahoma law supporting this assertion because there is no statute or decision by an Oklahoma appellate court suggesting that a subsequent statute does not apply to a guaranteed renewable policy. While plaintiff has provided law from other jurisdictions, he has not shown that Oklahoma would treat a guaranteed renewable policy as one continuous contract or even that this is the majority rule. Defendant was not required to speculate as to whether the Oklahoma Supreme Court would find that an intervening statute, such as § 3651, would not apply to the Policy, especially when the statute expressly applies to renewals. Defendant has also cited Tenth Circuit and Oklahoma Supreme Court cases showing that an insurer does not act in bad

23

faith by denying an insurance claim when there is an unsettled legal issue underlying the claim. See Davis v. Mid-Century Ins. Co., 311 F.3d 1250 (10th Cir. 2002) ("For bad faith liability to attach, the law at the time of the alleged bad faith must be settled."); Skinner v. John Deere Ins. Co., 998 P.2d 1219, 1223-24 (Okla. 2000) (insurer does not act in bad faith by litigating a coverage dispute when the law on the relevant legal issue was unsettled).  At most, plaintiff has shown that the effect of subsequent legislative enactments on a guaranteed renewable insurance policy is unsettled under Oklahoma law, and defendant did not act in bad faith by relying on an Oklahoma statute that expressly applies to renewed insurance policies to reduce payment on plaintiff's insurance claims submitted after November 1, 2006.

Plaintiff next argues that defendant should have known the statute was invalid or unconstitutional, and defendant acted in bad faith by relying on the statute.  Plaintiff cites no authority for the proposition that reliance on a state statute can ever be treated as an act of bad faith by an insurer, and the Court finds that this argument is meritless.  Even if the Court had found that § 3651 were unconstitutional, defendant did not act in bad faith by reducing plaintiff's claims under the Policy in compliance with § 3651.  See Anderson v. State Farm Mut. Auto. Ins. Co., 416 F.3d 1143 (10th Cir. 2005) ("Actions taken in reasonable reliance on existing case law cannot constitute bad faith because such conduct is not unreasonable.").  If the Court were to adopt plaintiff's argument, insurers would be placed in the untenable position of being required to make a determination of the validity of each state statute before deciding whether to follow it.  This would be an absurd result, and Oklahoma law does not impose such a duty on insurers.  Defendant is entitled to summary judgment on plaintiff's bad faith claim for all insurance claims for medical treatment after November 1, 2006.

**IT IS THEREFORE ORDERED** that Life Investors Insurance Company of America's Motion for Summary Judgment (Dkt. # 185) is **granted in part** and **denied in part:** it is granted as to plaintiff's breach of contract and bad faith claims for all insurance claims for medical treatment provided after November 1, 2006, but it is denied as to claims for medical treatment between April 1 and November 1, 2006.  Plaintiff's Motion for Partial Judgment on the Pleadings with Respect to the Applicability of §3651 with Brief in Support (Dkt. # 256) is **denied**.

**DATED** this 22nd day of February, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT