IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DENNY LINDLEY,           )
                                   )
        Plaintiff,        )
                                   )        **BASE FILE**
v.                       )        **Case No. 08-CV-379-CVE-PJC**
                                   )
LIFE INVESTORS INSURANCE    )        **Consolidated with**
COMPANY OF AMERICA,      )        **Case No. 09-CV-0429-CVE-PJC**
                                   )
        Defendant.      )

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Enlargement of Time by Sixty Days of the Deadline to Conduct Discovery into and File a Brief Supporting Numerosity.  [Dkt. No. 313].  For the reasons set forth below, the motion is **DENIED**.

*Background*

Plaintiff Denny Lindley ("Lindley") filed this action on May 30, 2008, in Tulsa County District Court alleging that Life Investors Insurance Company of America ("Life Investors") breached an insurance contract and acted in bad faith by reducing the amounts paid on Plaintiff's claims under a cancer-only insurance policy.  Payments were reduced from the amount billed by health care providers to the lower amount accepted by the providers as full payment.  Life Investors removed the case to this court.

In January 2009, Lindley sought to amend his Complaint to include class allegations [Dkt. No. 38].  This motion was denied as the deadline for amendment of

1

pleadings had passed.  Tin April 2009, Lindley filed a new lawsuit in Oklahoma County District Court alleging the same class claims against Transamerica Life Insurance Company ("Transamerica"), Life Investors' successor-in-interest.  *Lindley v. Transamerica Life Insurance Co.*, Case No. CJ-2009-3238 (Okla. Co. Dist. Ct.).  Lindley sought certification of an Oklahoma-wide class on his breach of contract and bad faith claims.  In May 2009, the Oklahoma County case was removed to federal court and transferred to the Northern District of Oklahoma.  *Lindley v. Transamerica Life Insurance Co.*, Case No. 09-CV-429-JHP-PJC.  On August 20, 2009, the two cases were consolidated.  [Dkt. No. 160].

When Plaintiff filed this lawsuit the issues at the heart of the matter were already being litigated elsewhere around the country.  Several of these cases involved class claims.  One of these was *Pipes v. Life Investors Insurance Company of America*, 07-CV-35-SWW (E.D.Ark.).  After filing *Pipes* the attorneys in that case filed five additional lawsuits in Arkansas, Mississippi, Michigan and Louisiana.  The *Pipes* court denied request for class certification; however, the parties continued to negotiate a nationwide class settlement.  When the parties in *Pipes* reached a class settlement, by agreement of the parties counsel for Pipes filed a class action Complaint in yet another lawsuit, *Runyan v. Transmaerica Life Insurance Company*, Case No. CV-09-2066-03 (Circuit Court of Pulaski County, Arkansas).  Based on *Runyan*, this Court stayed Lindley's class allegations herein pending further action in the Arkansas case.  [Dkt. No. 200].  Lindley complained in this case that the settlement agreement in *Runyan w*as unfair to class members; however, Lindley and others had opted out of the *Runyan* class and lacked

2

standing to complain.  *See* Dkt. No. 312 at 6-7.  Ultimately, the *Runyan* class settlement was approved by the Arkansas court and on Dec. 21, 2009, a Final Order and Judgment was entered.  [Dkt. No. 289, Ex. 1].

Meanwhile, in this case the Court entered its *Opinion and Order* on Feb. 22, 2010 [Dkt. No. 300], granting in part and denying in part Life Investors' motion for summary judgment.  The Court granted summary judgment as to Lindley's breach of contract and bad faith claims for all insurance claims for medical treatment provided after November 1, 2006 – the effective date of a State statute defining the term "actual charges."  The Court denied summary judgment as to claims between April 1, 2006 and November 1, 2006.[1]

On March 11, 2010, the Court denied Life Investors' Motion to Dismiss or Eliminate Plaintiff's Class Action Allegations based on the *Runyan* settlement.  The Court lifted the stay on Lindley's class allegations for the limited purpose of allowing discovery "on the issue of numerosity only."  *Opinion and Order* [Dkt. No. 312, at 9-10].

The Court's direction on the limited discovery permitted was explicit:

---

[1]    On April 1, 2006, Life Investors "corrected" its Proof of Loss procedures on cancer policies like Lindley's.  After April 1, in payment of "actual charges" incurred by an insured Life Investors paid the lower amount accepted as full payment by medical providers, not the full billed amount.  Life Investors terms this a "Proof of Loss correction."  In granting Lindley's motion for judgment on the pleadings, this Court found that "[w]hile defendant may call this a revision in claim procedures, it also reflects a change in its interpretation of 'actual charges.'" [Dkt. No. 140 at 12].  On Nov. 1, 2006, 36 O.S. § 3651 became effective.  This statute defined "actual charges" as used in specified disease insurance policies to mean the lower discounted amount "actually paid by or on behalf of the insured and accepted by a [medical] provider for services provided."

Instead of authorizing discovery on all issues related to class certification, the Court will lift the stay of proceedings on plaintiff's class action allegations and will allow limited class discovery on the issue of numerosity only. This limitation is necessary for two primary reasons. First, there is a significant possibility that the putative class members of plaintiff's proposed class may have been members of the *Runyan* class, and defendant has suggested that only plaintiff and one other Oklahoma resident opted out of the *Runyan* class. Second, the Court has recently issued an opinion and order (Dkt. # 300) granting summary judgment in favor of defendant on plaintiff's claims of breach of contract and bad faith as to plaintiff's insurance claims for medical treatment after November 1, 2006, and the proposed class will also be subject to a similar limitation. Thus, the proposed class may be smaller than the class envisioned when plaintiff filed his class action complaint.

[Dkt. No. 312 at 9-10].

The Court emphasized that discovery would not be permitted "on the issue of due process rights of absent class members in *Runyan* because plaintiff lacks standing to assert such an argument." *Id.* at 10. The Court directed the parties to file simultaneous briefs on the issue of numerosity under Rule 23(a)(1) no later than April 15, 2010. *Id.*

On March 15, 2010, Lindley filed the motion now under consideration, seeking an additional 60 days or until June 14, 2010, to conduct discovery and file an opening brief supporting numerosity. Defendant objects to the extension.

### *Discussion*

Lindley contains that in recent document production he has discovered new evidence showing that Life Investors had an agreement with the Oklahoma Insurance Department ("OID") in 1998 to pay benefits to Oklahoma policyholders based on the full amount billed by medical providers for services covered by cancer-only policies such as Lindley's. Lindley contends that under this "agreement" Life Investors was to

4

issue an amendatory endorsement for all of its insurance policies and explicitly define "actual charges" as the amount billed "before any insurance discounts, other insurance payments, reductions or discounts of any kind." [Dkt. No. 313 at 1-2]. At a hearing before the undersigned on April 2, 2010, counsel for Lindley described the evidence as a "game-changer" that puts the entire case "back to square one." Lindley contends that if there was such an agreement it would expand the potential class in this case because anyone with an express definition of "actual charge" in their policy would not be impacted by 36 O.S. § 3651 and would not be a member of the class settlement in *Runyan*.[2] For its part, Life Investors contends that the newly discovered evidence of an agreement is neither new nor evidence of any over-arching agreement between the insurer and OID requiring Life Investors to put an explicit definition of "actual charges" in all of its policies.

The claim of an agreement between Life Investors and OID starts with an October 2006 e-mail exchange between J. Angela Ables ("Ables"), outside counsel for Life Investors, and Dalora Schafer ("Shafer"), assistant OID commissioner. Ables was hired by Life Investors in 2006 in regard to issues concerning the insurance company's implementation of its "proof of loss correction." In an Oct. 18, 2006 e-mail, Ables states that an amending endorsement defining "actual charges" was not mailed in 1998 to policyholders of Bankers United Life Assurance Company, Life Investors' predecessor. Ables states that despite this the insurer paid the full billed amount of medical

---

[2]       36 O.S. § 3651 expressly limits its application to policies that do not define the terms "actual charge" or "actual fee."  36 O.S. § 3651(C).

providers' bills as though the endorsement had been sent to policyholders.  Ables told

Schafer that the insurance company wanted to be sure that when 36 O.S. § 3651 became

effective, "they can amend the policies to meet that definition when it becomes law.  Do

you have a problem with that occurring?"

On Oct. 24, 2006, Schafer responded:

First, the company agreed to amend the policy, filed the amendment and
then somehow did not send the amendment out to the policyholders.
That amendment defined "Actual Charge" and should have gone out.

The law [§ 3651] only applies to policies that don't define Actual Charge,
so we are in a situation where the policy should already contain the
amendment but doesn't.  I thought to send out the amendment at that
later date would probably confuse the policyholders as the company was
paying as if the amendment did go out.

Now we come to the point where there is a new law getting ready to
become effective November 1, 2006.

It would seem that the correct thing to do on these contracts would be to
go on and send out the amendment at this point, notify the policyholders
that there has been change in the law and they are providing coverage
under their contract as if it existed when it was originally purchased,
which is more beneficial to the policyholders than the new law.  This
would allow them to be the "good guys" while fulfilling their agreement
with OID.

Ables replied the same day:

They [the insurers] have fulfilled their agreement with the Department;
they have paid each and every claim as if the endorsement was there and
that the actual charge was the definition of whatever the doctor charged.
As you know, the doctors have taken advantage of some of the companies
in this regard and AEGON is certainly no exception.  They fulfilled their
obligation but I would now like to follow the law in Oklahoma as it will
become on November 1.  I don't see a problem with changing it then, but I
wanted to check with you.  Give it some thought and we'll talk later….

OID-000414-16.

Lindley has also submitted copies of letters between various insurers and OID relating to various policies, including several that are not at issue in this case. The correspondence indicates that the OID had questions in late 1997 about how insurers defined the term "actual charges" and how they processed payments. Lindley contends that from these documents one can infer a broad agreement between Life Investors and OID that Life Investors was required to put an explicit definition of actual charges in all of its insurance policies. If the policyholders are Third-Party beneficiaries of such an agreement, and an express "actual charges" definition is implied into their policies, those policies would not be directly affected by § 3651 because that section only applies to policies that do not define the term "actual charge." 36 O.S. § 3651(C). This, Lindley argues, could greatly expand the number of potential class members for his lawsuit.[3] Lindley also argues that if an explicit "actual charges" definition is read into the Life Investors policies, the *Runyan* class settlement would not apply.

The Court has reviewed the record evidence and finds it insufficient to establish the over-arching agreement Lindley would infer therefrom. The notices and letters between OID and insurance companies in 1997-98 reflect concern over

_____

[3] Lindley argues that if § 3651 does not apply then it cannot serve as a bar to post-Nov. 1, 2006, claims as this Court has previously held. *See* Dkt. No. 300, *Opinion and Order* at 15 (Granting summary judgment in favor of Defendant on all claims for insurance claims for medical treatment provided after November 1, 2006 and noting: "Section 3651 removes any ambiguity from the term 'actual charges' and plaintiff may not demand that he recover the higher billed amount now that the ambiguity has been clarified by the Oklahoma Legislature.")

7

the meaning of the term "actual charges," but they do not establish that there was an agreement that required Life Investors to provide a specific definition of "actual charges" as a medical provider's billed, undiscounted amount in **all** of Life Investors insurance policies.  Lindley's contention is highly speculative, relying largely on unsupported inferences.  Counsel indicated at the April 2, 2010 hearing that, in fact, Life Investors' corporate representative had testified the day prior that there was no such agreement.  Lindley interprets the various letters and e-mails between insurance companies and OID as sufficient evidence of such an agreement to allow him to widen the scope of discovery and extend it for two months.  In Lindley's view, this discovery could result in putting this case "back at square one" after two years of labor.

Defendant contends that the issue before the Court is easily determined. How many Oklahoma policyholders opted out of the *Runyan* settlement and, of these, how many have claims for unpaid or under-paid benefits.  If that number is not sufficient for purposes of Rule 23 numerosity analysis, further class action discovery is likely pointless.  The Court agrees.  Lindley has not provided a sufficient basis for this Court to extend discovery on the issue of numerosity, as requested.  Furthermore, the relief Lindley seeks would implicitly undermine the previous orders entered in this case [Dkt. Nos. 300 & 312].

ACCORDINGLY, the Motion for Enlargement of Time is **DENIED**.

IT IS SO ORDERED, this 7th day of April, 2010.

Paul J. Cleary
United States Magistrate Judge