**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DENNY LINDLEY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **BASE FILE** |
| v. ) | Case No. 08-CV-0379-CVE-PJC |
| ) | |
| LIFE INVESTORS INSURANCE ) | Consolidated with |
| COMPANY OF AMERICA, ) | Case No. 09-CV-0429-CVE-PJC |
| now known as TRANSAMERICA LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

Now before the Court are Plaintiff's Objections to Magistrate's February 17, 2010 Discovery Order (Dkt. # 306) and Life Investors Insurance Company of America's Objections to Magistrate's February 17, 2010 Discovery Order (Dkt. # 307). The parties object to a discovery order entered by Magistrate Judge Paul J. Cleary on February 17, 2010 (Dkt. # 297), and the Court will treat both motions as appeals from a non-dispositive order of a magistrate judge under Fed. R. Civ. P. 72(a).

**I.**

This case arose out of a change in Life Investors Insurance Company of America's (Life Investors) payment under policies using the term "actual charges." Before April 1, 2006, Life Investors reimbursed policyholders based on the amount billed by an insured's medical provider to an insured's primary health insurer, even if the insured's medical provider actually accepted something less than the billed amount as full payment. After April 1, 2006, Life Investors reimbursed its insured using the amount actually accepted by an insured's medical provider as full payment, even if the medical provider billed the patient or his primary health insurer for a higher amount.

This change in billing practices resulted from an internal investigation that Life Investors initiated in 2004. Life Investors had previously discontinued certain types of supplemental cancer policies authorizing unlimited benefits for chemotherapy and radiation treatments (Discontinued Supplemental Insurance or DSI), because the cost for these treatments was rising and Life Investors was required to increase premiums to cover these rising costs. Dkt. # 255, at 9. Life Investors formed the DSI Claims Taskforce (the Taskforce) to consider ways to avoid future premium increases, and Kelly Adams, Life Investors' Vice-President and Chief Financial Officer, appointed Stephen Gwin, an actuary, to lead the Taskforce. The Taskforce allegedly found that Life Investors' claims examiners were accepting insureds' bills as an accurate representation of the actual charges, even though the insureds' healthcare providers were accepting substantially less as full payment from the insureds' primary health insurer. Based on the Taskforce's recommendations, Life Investors claims that its Senior Vice President, Connie Whitlock, took action to "correct" Life Investors claims forms and procedures for payment of claims under polices using the term "actual charges." Whitlock sent an internal memorandum to James Byrne and Deborah Alexander, the claims managers of Life Inverstors' Louisville and Little Rock offices respectively, and announced the creation of a "Project Team" to implement the proposed changes.

On May 30, 2008, plaintiff filed this case alleging that Life Investors breached a supplemental, cancer-only insurance policy by reducing his claims to the amount accepted by his medical providers as full amount, rather than the higher amount billed to his primary health insurer by his treating physician. On June 2, 2008 and February 12, 2009, plaintiff served requests for production on Life Investors, seeking discovery of a wide range of information concerning Life Investors' "actual charges" policies. See Dkt. # 222, Exs. 1 and 2. Life Investors responded to the

requests and produced a 20 page privilege log identifying 164 allegedly privileged documents. Id., Ex. 3. The parties refer to this privilege log as the "Lindley Log" or "LIPriv-Lindley." Life Investors claimed that the documents listed on the privilege log were protected by attorney-client, work product, and a "self-critical" analysis privilege. There are numerous cases pending around the country concerning Life Investors' "actual charges" policies, and one of these cases is Gooch v. Life Investors Insurance Company of America, Case No. 07-CV-16 (M.D. Tenn.). In Gooch, Life Investors produced a 36 page privilege log listing over 200 additional documents. Plaintiff's counsel in this case claimed that Life Investors's privilege log did not list all relevant documents, because Gooch involves similar subject matter and all of the same documents listed on the Gooch privilege log should be discoverable in this case. Plaintiff's counsel combined the privilege log in this case and Gooch, and called the combined privilege log the Consolidated Privilege Log (CPL). Life Investors claims that not all of the documents produced in Gooch were relevant to plaintiff's claims, but acknowledged that some of the documents listed on the Gooch privilege may be responsive to plaintiff's requests for production. Life Investors created a Supplemental Privilege Log (SPL) identifying additional documents that may be responsive to plaintiff's requests for production but that were allegedly privileged.

On October 16, 2009, plaintiff filed a motion to compel production of all documents listed on the CPL. One of plaintiff's key arguments was that Life Investors impliedly waived attorney-client or work-product privilege by arguing that it reasonably and in good faith relied on the advice of counsel when it decided to "correct" its actual charges policies. Dkt. # 222, at 20. Plaintiff also argued that Life Investors filed counterclaims against him, and this impliedly waived any privilege for the documents listed on the CPL by placing the reasonableness of Life Investors' actions at issue.

Life Investors responded that it was not relying on the advice of counsel to establish the reasonableness of its conduct, and it had not waived its attorney-client or work-product privilege for documents listed on the CPL. Dkt. # 255, at 29.

Plaintiff's motion to compel was referred to the magistrate judge, and he set the matter for hearing on November 13, 2009. The magistrate judge took plaintiff's motion under advisement and directed Life Investors to produce the documents listed on the CPL for in camera review. Dkt. # 258. He also ordered the parties to confer about production of documents identified on the SPL and file notice if any dispute remained. Defendant withdrew its assertion of privilege for certain documents listed on the SPL, but plaintiff sought discovery of each document. Dkt. # 273, at 1. Life Investors stated that it would submit the disputed documents for in camera review, but it would not produce the documents to plaintiff without an order from the magistrate judge compelling discovery of these documents. Id. at 2.

On February 17, 2010, the magistrate judge issued a 45 page opinion and order granting in part and denying part plaintiff's motion to compel. Dkt. # 297. He determined that Life Investors had not placed the advice of counsel at issue by filing counterclaims against plaintiff, because Life Investors disavowed any intention of relying on this type of evidence to support its counterclaims. Id. at 24-28. He expressed "reservations" about Life Investors' strategy and reminded Life Investors "that it is bound by its decision in marshaling and presenting its evidence in dispositive motions or at trial." Id. at 28. The magistrate judge conducted in camera review of all documents produced by Life Investors. He determined that Life Investors did not anticipate litigation until October 19, 2004, and no documents created before that date qualified as attorney work product. He also found that many documents were not protected by attorney-client or work-product privilege,

and he ordered Life Investors to produce the unprivileged documents identified in his opinion and order. Both parties have appealed the magistrate judge's decision under Fed. R. Civ. P. 72(a). Dkt. ## 306, 307.

## II.

Federal magistrate judges may hear and determine any pretrial matter that is not dispositive of the case and must enter a "written order setting forth the disposition of the matter." 28 U.S.C. § 636(b)(1); Phillips v. Beierwaltes, 466 F.3d 1217, 1222 (10th Cir. 2006). Fed. R. Civ. P. 72(a) provides that an order of the magistrate judge on a pretrial matter that is not dispositive shall be set aside or modified only if the order is found to be clearly erroneous or contrary to the law. Under this standard, the district court should affirm the magistrate judge's order "unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Allen v. Sybase, Inc., 468 F.3d 642, 658 (10th Cir. 2006) (quoting Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988)).

## III.

Both parties have appealed the magistrate judge's February 17, 2010 opinion and order. Plaintiff seeks production of all 386 documents listed on the CPL, because the magistrate judge erred by failing to find that Life Investors impliedly waived any privilege it may have had by placing these documents at issue in this case. Dkt. # 306. Life Investors claims the magistrate judge erred when he determined that the work-product privilege did not apply to documents created before October 19, 2004, and also argues that certain documents that the magistrate judge ordered Life Investors to produce are protected by work-product or attorney-client privilege. Dkt. # 307.

5

**A.**

Defendant argues that the magistrate judge's conclusion that it did not anticipate litigation until October 19, 2004 is clearly erroneous or contrary to law, because the Taskforce consulted with in-house and outside counsel when preparing its recommendations and the Taskforce "recognized the possibility of litigation" as early as May 2004. Dkt. # 307, at 12. Plaintiff responds that the magistrate judge's rulings were not clearly erroneous or contrary to law, and should be affirmed.

The magistrate judge conducted a complete in camera review of all documents submitted by defendant, and determined that defendant did not anticipate litigation until October 19, 2004. He held that:

> Life Investors did not "anticipate litigation" until it consulted with the law firm of Jordan Burt, LLP on October 19, 2004. Until that time, the DSI Taskforce was convened for the business purpose of consider [sic] possible solutions to avoid or mitigate the effect of rising premium rates of the DSI policies. And the documents created during that time period were generated in the ordinary course of business and would have been created regardless of any potential litigation. Because the primary motivation for the creation of documents prior to October 19, 2004 was not to aid in possible future litigation, they are not protected from discovery as attorney work product.

Dkt. # 297, at 33. He grouped the documents created before October 19, 2004 into categories, and considered whether each category of documents was protected by attorney/client privilege.

Under Fed. R. Civ. P. 26(b)(3), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . " [T]he general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production . . . ." Hickman v. Taylor, 329 U.S. 495, 512 (1947). The work-product

privilege applies only to "attorneys' or legal representatives mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 668 (10th Cir. 2006). Fact work product is not absolutely privileged and discovery of fact or non-opinion work product may be compelled in some circumstances. In re Qwest Communications Int'l. Inc., 450 F.3d 1179, 1186 (10th Cir. 2006). The work-product privilege applies to material prepared in preparation of any litigation, not just the case in which the discovery is requested. See FTC v. Grolier, Inc., 462 U.S. 19, 24-25 (1983). If certain material is protected by the work-product privilege, discovery may be compelled only "(1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship." Frontier Refining, Inc. v. Gorman-Rupp. Co., Inc., 136 F.3d 695, 704 (10th Cir. 1998).

The Court has independently reviewed the documents provided by defendant, and finds that the magistrate judge's decision was not clearly erroneous or contrary to law. The documents show that defendant created the Taskforce to address a business concern - the need to increase premiums or reduce payment under DSI policies - and there was no imminent fear of litigation. Defendant argues that it could reasonably have anticipated that litigation would be filed if it changed its interpretation of actual charges. Dkt. # 307, at 12. However, until defendant made a firm decision to change its interpretation of "actual charges," defendant had no reason to believe that "actual charges" litigation was likely to arise. Defendant also argues that the Taskforce consulted with in-house and outside counsel, and several hypothetical litigation scenarios were discussed. Id. at 13. While there may have been a hypothetical risk that litigation might arise out this decision, the mere fact that the Taskforce consulted in-house or outside counsel about potential litigation scenarios does

not mean that defendant was acting in anticipation of litigation. Defendant argues that several "actual charges" cases were on file before October 19, 2004 and Life Investors anticipated it would be subject to a similar lawsuit. Defendant claims that <u>Ward v. Dixie National Life Insurance Co.</u>, Case No. 03-CV-3239 (D.S.C.) was filed on March 27, 2003, and <u>Claybrook v. Central United Life Insurance Co.</u>, 04-CV-0045 (M.D. Ala.), was filed on January 21, 2004. The Court has reviewed the documents provided by defendant, and there is no indication that the Taskforce was aware of these cases when considering the proposed change to the definition of "actual charges." Thus, the fact that "actual charges" cases may have been filed does not show that documents created before defendant retained Jordan Burt, LLP on October 19, 2004 were created in anticipation of litigation.

**B.**

Defendant objects to the magistrate judge's opinion and order to the extent that defendant is required to produce certain documents identified on the privilege logs. Plaintiff responds that the limited discovery permitted by the magistrate judge was reasonable, and defendant should be required to produce each of the documents identified as discoverable in the magistrate judge's opinion and order. The Court has independently reviewed each of the documents defendant has been ordered to produce.[1]

Defendant relies on the work-product and attorney-client privilege to resist the disclosure of documents. A federal court sitting in diversity must apply state law to determine the scope of a party's attorney-client privilege.[2] Fed. R. Evid. 501; <u>Sprague v. Thron Americas, Inc.</u>, 129 F.3d

---

[1] The Court will retain the magistrate judge's chronological, rather than numerical, organization of the documents when considering defendant's appeal.

[2] The Court has already provided a legal framework for the assertion and scope of a party's work-product privilege. <u>See</u> <u>supra</u> at 6-7.

8

1355, 1370 (10th Cir. 1997); White v. American Airlines, Inc., 914 F.2d 1414, 1424 (10th Cir. 1990). Under Okla. Stat. tit. 12, § 2502, a client may refuse to disclose any confidential communication made for the purpose of facilitating the rendition of professional legal services. The primary purpose of this privilege is to "shield the client's confidential disclosures and the attorney's advice." Sims v. Travelers Ins. Co., 16 P.3d 468 (Okla. Civ. App. 2000). The key elements for assertion of this privilege are the existence of an attorney-client relationship and the confidential nature of the communication. Chandler v. Denton, 741 P.2d 855 (Okla. 1987). The mere fact that an attorney-client relationship exists does make every communication between attorney and client privileged. Scott v. Peterson, 126 P.3d 1232, 1234 (Okla. 2005).

LIPriv-Lindley 0165-0166 are fax cover sheets with a list of proposed wording for policy provisions providing for payment of radiation therapy and chemotherapy treatment. The fax cover sheets do not contain any privileged information and the list summarizes policy terms for certain types of treatment. The fax was sent to Bill Baxley of Baxley, Dillard, Dauphin, McKnight & James, a Birmingham, Alabama law firm, on May 19, 2004. The fax cover sheets do not contain any legal advice or attorney work product, and the documents are not privileged. LIPriv-Lindley 0167-0169 consist of a fax cover sheet and two identical lists of questions sent to Baxley by Mark Edwards, in-house counsel for defendant and a member of the Taskforce. The fax cover sheet is not privileged and the questions do not request legal advice about pending or anticipated litigation. The questions concern defendant's hypothetical change to the definition of actual charges for business reasons, and these documents are not privileged. LIPriv-Lindley 0154 contains Gwin's notes from a May 20, 2004 meeting with Baxley and another attorney, Chuck Dauphin. Gwin's notes show that the meeting concerned the legality of defendant's proposed change to the definition of "actual

charges," proposed new language, and the risk of future litigation. The magistrate judge concluded that Gwin's notes do not constitute communication between attorney and client and the document should be produced. The Court disagrees and finds that Gwin, an actuary, was seeking legal advice from outside counsel about the proposed change to the DSI policies. The magistrate judge's conclusion as to this document was clearly erroneous and contrary to law. This document (LIPriv-Lindley 0154) is privileged and should not be produced to plaintiff.

Defendant objects to the magistrate judge's opinion and order requiring it to produce the "Goldstein Memorandum," of which there are several copies or drafts (LIPriv-Lindley 0120, 0173, 0002, 0020, 0104). David Goldstein was general counsel for Life Investors. Edwards sent a memorandum to Goldstein on June 22, 2004, and the memorandum, including a copy with Edwards' handwritten notes, were distributed to other employees within the company. The Goldstein Memorandum clearly contains legal advice, but the magistrate judge determined that defendant did not treat this document as confidential and the primary purpose of the Goldstein Memorandum was to provide business, rather than legal, advice. The Court finds that the magistrate judge's decision was clearly erroneous and contrary to law. The Goldstein Memorandum contains legal advice from defendant's in-house and outside counsel and was distributed solely to key persons within the company who were involved with the Taskforce and its project. Even if there was a business purpose for defendant to seek legal advice, this does not change the fact that the Goldstein Memorandum contains legal advice that defendant treated as a confidential communication between itself and its in-house counsel. Edwards later prepared an updated memorandum based, in part, on privileged legal advice he received from Goldstein (LIPriv-Lindley 0003, 0155, 0118, 0038, 0193, 0070), and there is an even greater focus on legal issues and the risk of future litigation. The

magistrate judge determined that defendant should produce a redacted version of the updated memorandum and accompanying e-mails (LIPriv-Lindley 0071-0073). In light of the Court's ruling that the original Goldstein Memorandum is privileged, the magistrate judge's decision to require defendant to produce redacted versions of the revised Goldstein Memorandum and accompanying documents was clearly erroneous and contrary to law. Defendant is not required to produce the original Goldstein Memorandum (LIPriv-Lindley 0120, 0173, 0002, 0020, 0104), the revised Goldstein Memorandum (LIPriv-Lindley 0003, 0155, 0118, 0038, 0193, 0070), or the e-mails accompanying the revised Goldstein Memorandum (LIPriv-Lindley 0071-0073) in any form.

Defendant argues that it should not be required to produce four internal e-mails (LIPriv-Lindley 0021, 0065, 0066, 0105). The magistrate judge determined that the e-mails had a "mixed" purpose and were not sent by Edwards primarily to provide legal services to defendant. Three of the e-mails (LIPriv-Lindley 0021, 0065, 0105) were sent among Life Investors' in-house counsel, and concern proposed changes to the "loss incurred" language contained in the DSI policies. The e-mails mention several judicial decisions, but there is no indication that the authors of the e-mails were giving legal advice. Instead, the cases were cited because they contained examples of alternate language that could be used in an insurance policy, and the e-mails do not contain any legal advice. The fourth e-mail (LIPriv-Lindley 0066) is an e-mail from Edwards to Adams and Gwin, and notes that he talked to Dauphin and an attorney specializing in Medicare law, Bruce Shirk. The mere fact that Edwards contacted attorneys is not privileged. None of these e-mails are protected by attorney-client or work-product privilege, and defendant must produce these documents. Defendant also objects to the production of LIPriv-Lindley 0023 and 0067, because the documents are e-mails between Shirk and Gwin and were made to assist Shirk in representing defendant. However, the

11

magistrate judge reasonably concluded that the e-mails do not contain privileged information and are not entitled protection as confidential communications between attorney and client.

The magistrate judge found that certain documents or attachments to documents produced after October 19, 2004 were not protected by attorney-client or work-product privilege. The magistrate judge ordered defendant to produce two e-mails (LIPriv-Lindley 0027, 0194) concerning whether it was necessary for defendant to contact outside counsel, but the e-mails contain no privileged information and were not drafted in the context of any pending or future litigation. It was not clearly erroneous or contrary to law for the magistrate judge to order defendant to produce these documents. The magistrate judge ordered defendant to produce the attachments to LIPriv-Lindley 0015, 0040, and 0061, but found that the e-mails themselves were privileged. The e-mails are clearly privileged communications between attorney and client, but the attachments were prepared in the ordinary course of business before October 19, 2004 and the attachments are not privileged. On May 26, 2005, Whitlock sent a fax containing a draft memorandum (LIPriv-Lindley 0131) to Edwards, and Edwards made notations on his copy. However, the memorandum does not contain any privileged information and Edwards' notations are simply proposed stylistic changes that do not contain any legal advice. The draft memorandum is not protected by attorney-client or work-product privilege.

The magistrate judge denied defendant's request to produce redacted copies of LIPriv-Lindley 0016, 0017, 0018, 0064, 0091, LIICA 005168, and 005171. The Court has reviewed the documents and finds that none of the documents contain privileged attorney-client communications or were prepared in anticipation of litigation. The magistrate judge did not err by denying defendant's request to produce these documents in redacted form.

Finally, defendant objects to the magistrate judge's decision that exhibits B and C to the Jordan Burt report are not privileged. Exhibit B is a list of marketing materials and exhibit C is part of a chart attached to an e-mail sent by Gwin. Defendant argues that these documents were created by Jordan Burt and contain the mental impressions and legal advice of defendant's attorneys. The Court has reviewed the documents and finds that they are not privileged. Exhibit B is a list of non-privileged material provided to Jordan Burt and exhibit C is part of an unprivileged e-mail containing information that can be gathered from a review of defendant's non-confidential insurance forms. The magistrate judge's decision to require production of exhibits B and C was not clearly erroneous or contrary to law.

## C.

Plaintiff argues that he is entitled to discovery of all documents listed on the CPL, because defendant implicitly waived work-product or attorney-client privilege for these documents and the magistrate judge erroneously applied a "choice of defense" exception to the implied waiver rule. Plaintiff claims that the magistrate judge found all facts necessary to establish an implied waiver of defendant's privileges, but did not require defendant to produce the documents due to defendant's statement that it would not rely on the advice of counsel as a defense. Defendant responds that plaintiff overstates the magistrate judge's factual findings, because the magistrate judge did not find that defendant impliedly waived any privilege by filing counterclaims. According to defendant, the magistrate judge could not have applied an exception to the "at issue" implied waiver doctrine, because he did not find an implied waiver of any privilege.

A litigant does not automatically waive privilege protection by asserting a claim, counterclaim, or affirmative defense placing certain subjects "at issue" in a case. Frontier Refining,

13

136 F.3d at 701. The magistrate judge applied a three factor test to determine if defendant waived its right to assert work-product or attorney-client privilege by filing counterclaims against plaintiff:

> 1. Whether the assertion of the privilege is the result of some affirmative act, such as filing suit or asserting an affirmative defense by the asserting party.
>
> 2. Whether the asserting party, through the affirmative act, put the protected information at issue by making it relevant to the case.
>
> 3. If the privilege was applied, would it deny the opposing party access to information that was vital to the opposing parties [sic] defense.

Cardtoons, L.C. v. Major League Baseball Players Ass'n, 199 F.R.D. 677, 681 (N.D. Okla. 2001) (citing Hearn v. Rhay, 68 F.R.D. 574, 580 (E.D. Wash. 1975). Once the work-product or attorney-client privilege is established, the party seeking to overcome the assertion of a valid privilege bears the burden to show that the privilege has been waived. Allstate Ins. Co. v. West American Ins. Co., 2010 WL 1529605 (D. Colo. Apr. 15, 2010). Some courts have expressed that the Hearn test is too broad and opens up too many privileged communications to discovery, and have added an additional element that a party must actually rely on privileged advice from counsel before the doctrine of "at issue" waiver applies or have outright rejected the Hearn test. In re County of Erie, 546 F.3d 222, 229 (2d Cir. 2008); Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 864 (3d Cir. 1994); Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., ___ F.R.D. ___, 2010 WL 558719 (D.D.C. Feb. 12, 2010); Aristocrat Leisure Limited v. Deutsche Bank Trust Co. Americas, 2009 WL 3111766 (S.D.N.Y. Sep. 28, 2009). The Tenth Circuit has cited, but not expressly adopted, the Hearn test. Frontier Refining, 136 F.3d at 701.

In this case, the magistrate judge applied the Hearn test and found that plaintiff had not established "at issue" waiver of defendant's attorney-client or work-product privilege. Defendant has asserted counterclaims against plaintiff, and the magistrate judge could not rule out that

14

defendant might rely on the advice of counsel to support its counterclaims or as a defense to plaintiff's bad faith claim:

> Based on the allegations and the counterclaims, the Court cannot rule out that Life Investors' affirmative acts in making these allegations and bringing these claims against Lindley "put the protected information at issue by making it relevant to the case." *Cardtoons*, 199 F.R.D. at 681 (quoting *Hearn*, 68 F.R.D. at 580). Neither can the Court say that the information is not vital to his defense. The Court is curious as to how Life Investors intends to defend Lindley's bad faith breach of contract claim against it without the protected information.

Dkt. # 297, at 27. He expressed reservations about the wisdom of defendant's tactical decision, but he accepted defendant's representation that it would not be relying on the advice of counsel for any purpose. Id. at 28. Thus, he determined that the second element of the Hearn test had not been satisfied, because defendant had not placed the advice of counsel at issue in this case. He also reminded defendant that it was bound by its decision and defendant could not rely on privileged information at a later stage in this case. Id.

The magistrate judge did not find that defendant waived its work-product or attorney-client privilege and this decision was not clearly erroneous or contrary to the law. Contrary to plaintiff's assertions, the magistrate did not find that plaintiff had proven all of the necessary facts to establish "at issue" waiver, nor did the magistrate judge apply a "choice of defense" exception. Instead, the magistrate judge found that defendant had disavowed any reliance on the advice of counsel and defendant has not impliedly waived its right to assert work-product or attorney-client privilege. Dkt. # 297, at 28 ("In spite of its reservations stated above, based on Life Investor's representation that it will in no way rely on the protected information, the Court does not find implied waiver of any attorney-client or attorney work product protection."). He expressed "curiosity" as to how defendant would support its counterclaims or defend against plaintiff's bad faith claims, but he did not find that

15

defendant had placed the advice of counsel at issue or that the information plaintiff sought was vital to his defense. Id. at 27. Plaintiff's appeal is based on two faulty assumptions. Plaintiff assumes that the magistrate judge actually found facts supporting "at issue" waiver and, supported by this first assumption, plaintiff assumes that the magistrate judge applied an improper "choice of defense" exception to the "at issue" implied waiver doctrine. Neither of plaintiff's assumptions is accurate. The magistrate judge's decision to reject plaintiff's request for application of the "at issue" waiver doctrine was reasonable, and plaintiff's appeal of the magistrate judge's opinion and order should be denied.[3]

**IT IS THEREFORE ORDERED** that Plaintiff's Objections to Magistrate's February 17, 2010 Discovery Order (Dkt. # 306) is **denied.** Life Investors Insurance Company of America's Objections to Magistrate's February 17, 2010 Discovery Order (Dkt. # 307) is **granted in part** and **denied in part**: the magistrate judge's opinion and order is **modified** to the extent that he ordered defendant to produce LIPriv-Lindley 0002, 0003, 0020, 0038, 0070, 0071, 0072, 0073, 0104, 0118, 0120, 0154, 0155, 0173, and 0193, and defendant is not required to produce these documents to plaintiff; in all other respects it is affirmed.

**DATED** this 28th day of April, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] It is not necessary to reach plaintiff's argument that evidence of defendant's reliance on the advice of counsel is relevant to punitive damages, because the Court finds no implied waiver of defendant's attorney-client privilege.